WESTERN BANK OF BALTIMORE, *garnishee of* JAMES M. RAISIN, *vs.* ADAM B. KYLE.—*June,* 1848.

In 1841 *K.* obtained a decree in equity against *R.*, who, in 1843, delivered to *K.* his notes, with security, payable in six, twelve, and eighteen months, for about one-fifth of the amount of the decree. *K.* agreed to release *R.* from the decree, provided that, upon failure to pay " the above-mentioned notes at maturity, the decree to continue in full force, and the agreement to be null and void." The two first notes were paid at maturity ; and some months after, the third fell due, in 1845, *K.* received and accepted the whole amount, with interest on it to the day of payment. In 1846, *K.* sent out an attachment against *R.* The garnishees pleaded payment by *R.* The effect of the payment of the three notes was the only question submitted to the Court. *Held,*

1. The receipt of the notes, and the acceptance of the security, must have been intended as a satisfaction of the decree, if they had been paid at maturity.

2. *K.* could not treat the agreement as a nullity, and still hold on to the notes.

3. The agreement was a compromise, in consideration of security for the compliance of its terms.

4. On failure to pay the third note at maturity, *K.* might have treated the whole agreement as a nullity ; and be remitted to his decree crediting it with the two notes paid.

5. Time, in such a case, is an essential ingredient of the contract. The stipulation was for the benefit of *K*, who might renounce it. It was voidable at his election.

6. A condition in a lease, that, upon neglect of the lessee to pay the rent, or any other failure to perform on his part, the lease shall cease and determine, does not render the lease absolutely void, upon the default in performing the condition, but voidable at the election of the lessor; if he elect to waive the forfeiture, the lessee is bound, as though there had been no breach of condition.

7. If the agreement in this case became a nullity, so did the note. If *K.* had proceeded on his decree, he must have produced the *third* note to be cancelled.

8. The court will not dispense with the point of time in composition, but it may be waived.

9. A mere agreement between parties, to accept a *less* sum for a larger amount agreed to be due, is a *nudum pactum.*

APPEAL from *Baltimore* County Court.

This was an attachment, sued out on the 9th March, 1846, by the appellee against *James M. Raisin,* and laid in the hands of *The Western Bank of Baltimore,* on the 11th of that month.

It was founded on a decree obtained in *Baltimore County Court*, as a *Court of Equity*, on the 22d December, 1841, for $3,200, &c.; revived on the 10th November, 1845.

The garnishees pleaded payment by *James M. Raisin.*

1st Exception.—The plaintiff, to support the issue on his part, gave in evidence a decree of *Baltimore* county court, passed on the equity side, 22d December, 1841.

The garnishee, to support the issue on his part, offered in evidence an agreement in writing, entered into between the plaintiff and the said *James M. Raisin*, the hand writing of which was admitted on the part of the plaintiff.

$600.   *Baltimore,* 29th April, 1843.—Received of *James M. Raisin,* three joint notes of himself and brother, *Dr. E. F. Raisin,* for $600, as follows:

One dated 1st April, 1843, at 6 months, bearing interest from 1st October, 1842, for $200 00.

One dated 1st April, 1843, at 12 months, bearing interest from 1st October, 1842, for $200 00.

One dated 1st April, 1843, at 18 months, bearing interest from 1st October, 1842, for $200 00.

Making the above mentioned sum of six hundred dollars.

Upon the payment of these notes at maturity, we agree to release *James M. Raisin* from all penalties and liabilities, on account of a judgment recovered against him in *Baltimore* county court, for $3,200 00.   Provided, always, that upon the failure, on the part of *J. M. Raisin* or *E. F. Raisin,* to pay the above mentioned notes at maturity, our judgment against *J. M. Raisin* to continue in full force, and this agreement to be null and void.                DINSMORE & KYLE, *for A. B. Kyle.*

And also offered in evidence the three promissory notes of the said *James M. Raisin* and *E. F. Raisin,* mentioned in said agreement, the amounts of which, with the interest growing thereon, were admitted, by the plaintiff, to have been paid him upon the days respectively mentioned in the receipts therefor, endorsed on said notes.

$200.                    *Kent County, Md., April* 1, 1843.

Six months after date, we, and each of us, promise to pay *Dinsmore & Kyle*, or order, two hundred dollars, for value received, with interest from the first day of October, 1842.

JAMES M. RAISIN.

E. F. RAISIN.

On the back whereof is the following statement and receipt, to wit:

*J. M. Raisin* and *E. F. Raisin*, $200.

| | |
|---|---:|
| April 1st, at 6 months, | $200 00 |
| Interest, | 12 00 |
| Collection in check, | 50 |
| | $212 50 |
| P'd check on Smyrna, of *E. F. Raisin*, Oct. 2. | 200 00 |
| | $12 50 |

Received twelve dollars and fifty cents on settlement— within note of Messrs. *Pope & Green.* DINSMORE & KYLE. *Balto., October*, 1843.

$200.                    *Kent County, Md., April* 1, 1843.

Twelve months after date, we, and each of us, promise to pay *Dinsmore & Kyle*, or order, two hundred dollars, for value received, with interest from the first day of October, 1842.                    JAMES M. RAISIN.

E. F. RAISIN.

On the back whereof is the following statement and receipt, to wit:

*J. M. Raisin* and *E. F. Raisin*,

| | |
|---|---:|
| April 1st, 1843, 12 months, | $200 00 |
| Interest, | 18 00 |
| | $218 00 |

*Balto., 2d April*, 1844.—Received amo't of within note of Mr. *C. Green.*                    DINSMORE & KYLE,

*per Henry W. D. Kyle.*

$200.                    *Kent County, Md., April* 1, 1843.

Eighteen months after date, we, and each of us, promise to pay *Dinsmore & Kyle*, or order, two hundred dollars, for value received, with interest from the first of October, 1842.

JAMES M. RAISIN.

E. F. RAISIN.

On the back whereof is the following statement and receipt, to wit:

*J. M. Raisin* and *E. F. Raisin*, April 1st, 1843, 18 months, due 1st October, 1844.

| | | |
|---|---|---:|
| Amount note, . . . | | $200  00 |
| Interest from 1st October, 1842, | | |
| to 25th June, 1845, | | 32  82 |
| | | $232  82 |

*Baltimore, June* 25, 1845.—Received, by the hands of Mr. *T. H. Horsey*, two hundred and thirty-two dollars and eighty-two cents, the am't of within note.        DINSMORE & KYLE.

The parties agreed to submit to the court, as the *only* question of law to be raised in the cause, the effect of the payment and receipt of the *third* and *last* of said notes under the said agreement.

The garnishee prayed the court to instruct the jury, that upon the facts offered in evidence, the receipt by the plaintiff of the amount of the *third* note, and interest thereon, on the day on which it was paid, was a waiver on his part of the default of the said *Raisin*, in not paying or causing it to be paid at maturity; and prevented any recovery by him, upon the decree given in evidence on his part.

Which instruction the court (LE GRAND) refused to give, but directed the jury that to the extent to which the garnishee had funds of the said *Raisin* in his hands, at the time the attachment was laid, provided the same did not exceed the balance of said decree, after deducting the amount paid on said notes, the plaintiff was entitled to recover, and that the non-payment, at

maturity, of the last of said notes, remitted the plaintiff, under the foregoing agreement, to the whole debt mentioned therein. To which refusal and direction the said garnishee excepted.

The verdict and judgment being against *The Western Bank* it prosecuted the present appeal.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN, and FRICK, J.

By J. MASON CAMPBELL and REVERDY JOHNSON for the appellants, and

By ALEXANDER for the appellees.

FRICK, J., delivered the opinion of this court.

In this case, *Kyle*, the appellee, was a creditor of *James M. Raisin*, to whom the *Western Bank of Baltimore*, the present garnishee, was indebted in a sum of money, upon a judgment obtained against the bank. Out of the amount of this judgment, *Kyle*, by this proceeding in attachment, seeks to recover the sum alleged to be due to him by *Raisin*.

*Kyle* had originally, at the December term of *Baltimore* County Court, in Equity, obtained a decree against *James M. Raisin*, for the sum of $3,200, with interest thereon, from the 31st January, 1838; and with this decree unsatisfied, received from *Raisin* three notes, with *Raisin's* brother as surety, amounting in all to $600; for which notes he delivered to *Raisin* the following receipt:

"$600.                              *Baltimore, 29th April,* 1843.

"Received of *James M. Raisin* three joint notes of himself and brother, *Dr. E. F. Raisin,* $600, as follows:

"One, dated 1st April, 1843, at 6 months, bearing interest from 1st of October, 1842, for $200.

"One, dated 1st April, 1843, at 12 months, 1st October, 1842, $200.

"One, dated 1st April, 1843, at 18 months, 1st October, 1842, $200. Making the above mentioned sum of $600.

"Upon the payment of these notes, at maturity, we agree to

release *James M. Raisin* from all penalties and liabilities on account of a judgment recovered against him in *Baltimore* County Court, for $3,200. Provided always, that upon the failure on the part of *J. M. Raisin*, or *E. F. Raisin* to pay the above mentioned notes at maturity, our judgment against *E. M. Raisin* to continue in full force, and this agreement to be null and void.

Dinsmore & Kyle, *for A. B. Kyle.*"

Of these notes thus given, it appears that the two first were paid at maturity ; one of them, as appears by the receipt on the back of it, by *E. F. Raisin.* The third was not paid at maturity, but *Kyle* subsequently, on the 25th of June, 1845, (nearly nine months after it became due) received and accepted the whole amount, with interest on it to the day of payment.

To the attachment, the garnishee on behalf of the defendant, *James M. Raisin*, pleaded payment. And both parties agreeing to submit to the court, as the only question of law to be raised in the cause, the effect of the payment and receipt of the third and last of said notes under the said agreement, the court directed the jury, "that to the extent to which the garnishee had funds of the said *Raisin* in its hands at the time the attachment was laid, provided the same did not exceed the balance of said decree, after deducting the amount paid on said notes, the plaintiff was entitled to recover, and that the non-payment at maturity of the last of said notes, remitted the plaintiff under the foregoing agreement, to the whole debt mentioned therein."

In this instruction we think the court erred. That the release predicated upon the payment of the notes at maturity, must have been conclusive against *Kyle*, if the notes had been met according to the agreement, is undeniable. For the receipt of the notes, and the acceptance of the surety for payment, must have been intended in satisfaction of the whole debt, provided the condition upon which the release was to take effect had been complied with.

It has, however, been contended that the agreement was but a present indulgence, by suspension of further proceedings

against the debtor; that is, the notes, with security, were intended as the purchase money for the indulgence, and were to be paid at all events, even if the release never attached, by the non-compliance in time; that the extinguishment of the entire debt on compliance with the terms, was but to stimulate the payment of the notes at maturity.

On this construction the appellee claims both the benefit of the default, and the security on the notes; and in this mode of construing the agreement, it is that we detect the fallacy of the instruction, which assumes that he might treat the agreement as a nullity, and still hold on to the notes. It is clear to us that the agreement was not intended as an indulgence to the party by a suspension of the debt, but it was a compromise in consideration of security for the compliance of the terms, which if met according to the express stipulations, was to operate as an extinguishment of the whole debt. On the failure of *Raisin* to pay the third note, on the 2d October, 1844, there is no doubt that *Kyle* might have treated the whole agreement as a nullity. He was remitted back again to the original cause of action. He might have credited the debt with the two notes paid, and have proceeded *instanter* upon his decree for the whole balance due. Time was an essential ingredient in his contract, and if the notes were not all paid as they matured, the agreement was to be null and void. By the agreement, the original debt was not cancelled, on the contrary, it was to revive in case of default in the payment of the notes in time. This stipulation was for the benefit and in favor of the appellee. He was not bound to enforce it. He might still, at his election, renounce the right introduced entirely for his advantage, and proceed upon the compromise. The option is with him to avoid the agreement. It is not necessarily void, but voidable at his election. " A condition in a lease, that upon neglect of lessee to pay the rent, or any other failure to perform on his part, the lease shall cease and determine or become null and void, does not render the lease absolutely void upon the default in performing the condition, but voidable at the election of the lessor; if he elect to waive the

forfeiture, the lessee is bound, as though there had been no breach of condition," 1 *Denio*, 516. 50 *Law Library*, 200.

What is the true construction of the conduct of the appellee here? Did he elect to stand by his forfeiture on the 2nd October, 1844, when the last note matured? Would he not naturally, at once, and instanter, have resorted to his original cause of action, if he intended to treat the agreement as a nullity, and insist on the default? Or did he not rather signify on his part a waiver of the forfeiture, by waiting nine months for the payment of the last note, during all which time he had the option and election of enforcing the penalty of the agreement. If within that time, he had elected to proceed upon the forfeiture, would he not, or ought he not to have handed back the third note, and relieved the surety under the agreement? For in this view his election to stand by the forfeiture must invalidate the outstanding note. If the agreement became a nullity, so also did the note; and if he had followed up the default by instant proceedings against *James Raisin*, he must have produced this third note and offered it to be cancelled, before he could recover the whole balance of his claim.

But after an interval of nine months he received from the parties the payment of this third note, with interest in full. Was not this acceptance an assertion, or admission of existing rights under the agreement? That note had no legal existence or validity, but under the agreement. He might, it is true, have sued upon it, as soon as it became due; but if so, it must be that he held the agreement still in force, and had elected to waive the forfeiture. And if he waited to receive the amount without suit, is not the receipt of it, an affirmance of the continued existence of the agreement? By the receipt on the back of the note on the 15th June, 1845, he concedes the compromise to be in full life. He himself revived it, and waived the default; and what was done on that day, was as if done on the day agreed upon in the note.

The case *ex parte Bennett*, in 2d *Atkyns Chancery Reports*, 526, cited in the argument of this cause, is a case in point. There *Lingood* being indebted to *Bennett* in a large sum, it was

agreed to compound for a certain amount, to be paid to *Bennett* by instalments of £25 every quarter of the year. *Lingood* paid the first, and for the second gave *Bennett* two notes, payable at a future day, which *Bennett* accepted. *Lingood* became bankrupt, and *Bennett* insisted before the commissioners, that he had a right to prove his whole debt. The Lord Chancellor said: "The rule has been rightly laid down, that the court will not dispense with the point of time in compositions. For when a creditor agrees to take less than his debt, so that it be paid precisely at the day, and the debtor fails of payment, he cannot be relieved." But "*Bennett's* acceptance of the two notes from *Lingood* instead of the money, is a waiver of the particular default in the payment of the instalment." It is also to be observed, that this is not the case of a mere agreement between the parties to accept a less sum for a larger amount, agreed to be due, which is *nudum pactum.* In such case, the appellee would have the right, as claimed by his counsel, to receive the $600, and credit the amount *pro tanto* on the judgment or decree. That rule may well apply to a security of equal degree for a smaller sum, which is no satisfaction for a larger one, payable in the same manner. But here where there is a new consideration for the relinquishment of the residue of the debt—the security of *Raisin's* brother upon the notes. The books abound with authorities to show, if paid, it is a good accord and satisfaction of the whole debt. Here the brother, it appears, paid at least one of the notes. And it is said by Lord *Ellenborough*, in 11 *East.* 394, cited in *Geiser vs. Kershner*, 4 *G. & J.* 307, " if on the faith of such agreement, a third person be lured in to become surety for any part of the debts, on the ground that the party will be thereby discharged of the remainder, the agreement is binding." It is the security for a less sum which, if the creditor accepts, as a satisfaction for the whole debt is a sufficient and binding consideration. But the whole amount stipulated for must be paid. 3 *Eng. Com. Law*, 363. 1 *Taunt.* 526. 20 *Johns.* 78. 2 *Metcalf*, 283. 1 *Smith's Leading Cases*, 146. And as in the case under review, *time* may be made an essential

ingredient in the contract. But as before remarked, such a stipulation may be waived by the party in whose favor it is made. *Kyle* did not choose to insist on his forfeiture, and proceed against the original debtor for his balance; but *elects* to abide by the note for which he has security, accepts the $200, with interest, *after the default*, and receipts in full for the same on the note.

This he must be presumed to have done with a knowledge of his rights, and of all the consequences; and the receipt by him of the amount of the third note, must be construed as a waiver on his part of all right under the agreement to claim or enforce the forfeiture.

In the discussion of the case, the counsel for the appellee urged the objection before the court, that the plea of payment did not meet the case presented; that the only answer to an acceptance of a less sum in satisfaction of a larger, is accord and satisfaction. "It appears, however, by an endorsement of this plea, that all errors in pleading on both sides are released, and the garnishee may have liberty to give the special matter in evidence under it." To this agreement it may be objected, perhaps, that it is only signed by the counsel for the garnishee. But we find the further agreement before adverted to, that the only question to be raised in the cause was upon the effect of the payment, on which this court have just expressed their opinion; so that if the release of errors is not obligatory on both parties, yet both have agreed to restrict themselves to the only one question submitted by them. The only prayer offered is predicated upon the notes offered in evidence, as being a satisfaction of the debt. No question is raised in the prayer, or upon the record, as regards the pleadings; and where it does not appear in the record that the question, as regards the form or sufficiency of the pleading, has been submitted or decided in the court below, this court has only to repeat here, (in recurring again to the act of 1825, ch. 117,) that it is prohibited from entertaining the question. Further, it is urged that as the writ of attachment, after reciting the decree of 1841 against *Raisin*, alleges the revival of said decree, in November, 1845,

as part of the cause of action; and the only defence taken being on this plea of payment, the plea must necessarily have reference to the said decree so revived; and there being beyond this plea no other denial of the validity of this decree, its operation in the case concludes the defendant below; because the previous acceptance and payment of the notes in evidence cannot be said to be an answer to the *subsequent* decree or judgment so revived, as the cause of action.

It might be a sufficient answer to this on the part of the appellee to say, that although such decree is recited in the writ as part of the cause of action, yet it no where appears in proof upon the record. No evidence was offered in the court below of the existence of such revived decree.

The plaintiff there gave in evidence a decree on the equity side of the court, dated 22d December, 1841, and then rested his case. The garnishee, to support the issue made, offered the agreement and the proof of the payment of the notes, as before stated, and of course with reference to the decree of 1841. So that this position is not maintained in fact; but even if allowed to have any force as urged by counsel, the point is concluded by his own agreement, to restrict the enquiry in this case singly to the effect of the payment of the notes under the agreement, on which the opinion of the court, as before expressed, is against the appellee, and the judgment below is reversed.                    **JUDGMENT REVERSED.**