# WENDELL BOLLMAN vs. HORACE B. BURT.

*Construction of Contract—Legitimate inference—Province of Jury—Waiver of Defaults—Right to rescind Contract.*

On the 15th of January, 1880, the following written contract was made: "I, H. B. B., agree to furnish W. B. two hundred tons anthracite pig iron * * * for the sum of thirty-seven dollars per ton, to be delivered in quantities of about eighteen tons per month. I, W. B. agree to take the iron as above specified * * *." No deliveries of iron were made with the exception of two small parcels in March. These were delivered on trial, and there was evidence tending to show that they were not of the kind and quality required by the terms of the contract. On the 12th of May, H. B. B. wrote a letter to W. B. in which he stated he was prepared to deliver iron for the month ending the 15th of May, according to the agreement of the 15th of January. On the next day W. B. replied that as no deliveries had been made in January, February, March and April, he had considered the contract null and void, and had so informed him some time before, and that he still so considered it. In an action by H. B. B. to recover from W. B. for refusing to receive the iron in accordance with the contract, it was HELD:

1st. That under the contract W. B. was entitled to receive two hundred tons of iron, and to have it delivered in monthly instalments.

2nd. That the parcels of iron to be delivered in monthly instalments, were to be paid for separately; and a failure to make one delivery would not necessarily affect the right and duty of the seller to make another, or the duty of the purchaser to receive and pay for another.

3rd. That it was reasonable to infer from the fact of sending to the furnace of H. B. B. in March to get iron, though only for trial, that W. B. considered the contract as subsisting at that time; and the propriety of this inference was a matter for the consideration of the jury.

4th. That if the jury found that W. B. at that time regarded the contract as in force, all the previous defaults were waived by him, and he could not afterwards set up those defaults as reasons for annulling the contract.

5th. That if the April default was not waived, and of such waiver there was no evidence, W. B. had a right to annul the contract on this ground, provided he gave due notice to H. B. B. of his determination so to do.

APPEAL from the Court of Common Pleas.

This action was brought by the appellee to recover damages from the appellant for refusing to receive certain iron in accordance with the terms and conditions of the written agreement set out in the opinion of the Court.

*Exception.*—The evidence having been closed on both sides, the plaintiff offered the following prayer:

That default made by the plaintiff in delivering iron under the contract of January 15th, 1880, on or before the end of each month from the date of said contract, as shown in evidence, did not, in law, operate to annul and put an end to said contract, or to the rights and duties of the parties to it, except at the election of the defendant. And if the jury find that after default on the part of the plaintiff, in making such deliveries, as shown in evidence, the defendant, with knowledge that such default had occurred, did not elect to treat said contract as at an end by reason of such default, and so notified the plaintiff, but that said defendant, in his dealings and intercourse with the plaintiff, continued to treat said contract as still in force, notwithstanding such default so known to him, and so continued to deal with the plaintiff, with reference to the matter, as to cause the plaintiff to believe that defendant regarded said contract as still in force, notwithstanding such default, and that plaintiff, in fact, proceeded to complete his preparations to make delivery of iron under his contract, under the circumstances above set forth and required to be found, and that he did, in fact, offer to deliver it on the 12th day of May, 1880, then the defendant could not lawfully refuse to accept and pay for iron under said contract, after dealing with the plaintiff, as above required to be found, and if they find that he did

so refuse under the circumstances above required to be found, and that plaintiff tendered delivery of iron under said contract as testified to by him, their verdict must be for the plaintiff.

The defendant offered the following prayers:

1. That if the jury shall find from the evidence, that the defendant wrote and sent to the plaintiff, and the plaintiff received the letter of January 16th, 1880, offered in evidence; that the plaintiff neither made, nor tendered to the defendant, delivery of any iron of the kind and quality mentioned in the written contract of January 15th, 1880, until the tender made by the letter of the plaintiff dated May 12th, 1880, if they find said letter was written and sent by the plaintiff to the defendant, and that the defendant, upon the receipt of said letter, wrote in reply the letter of May 13th, 1880, and sent the same to the plaintiff, then by the true construction of the said written contract of January 15th, 1880, the defendant had the right to refuse to receive iron under said contract, and the verdict of the jury must be for the defendant.

2. That although the jury shall find from the evidence, that the foreman of the defendant on the 14th and 16th of March, 1880, came to the furnace of the plaintiff and selected, on the first occasion, two tons, and on the second occasion four tons of iron, with directions to send the same to the defendant's works, and that the same were so sent and retained by the defendant, yet these facts constitute no partial delivery and acceptance of iron under the contract of January 15th, 1880, if the jury shall further find that said foreman, when selecting said iron and directing it to be sent to defendant's works, stated to the plaintiff that the same was selected to be sent to the defendant's works for trial, and that said iron was tested and tried by the defendant at his works, and found not to be of a quality equal to Ashland No. 2, or No. 3 foundry iron, and

was not accepted by defendant as a delivery under the said contract of January 15th, 1880.

3. That if the plaintiff is entitled to recover in this case, then the measure of damages to which he is entitled, is to be arrived at by ascertaining the market price of iron on the 15th day of each month, from May 15th, 1880, to January 15th, 1881, and then ascertaining how much on each of said days 18 tons of iron at the market price was worth, less than it would have been at 37 dollars a ton, and then adding each of the sums so ascertained together, and adding also to the aggregate of said sums, the difference between the cost of two tons of iron at 37 dollars a ton and the cost of said two tons at the average market price on the 15th of each month, from May, 1880, to January, 1881.

4. If the jury shall find from the evidence, that owing to the failure of the plaintiff to furnish iron to the defendant, as by the terms of the written contract of January 15th, he was bound to do, for the months ending February 15th, 1880, March 15th, 1880, and April 15th, 1880, the defendant suffered any damage by reason of said failure of the plaintiff to furnish the iron for said months, then the jury must deduct the amount of such damages, from the amount of such damages as they shall find was caused to the plaintiff by reason of the refusal of the defendant to receive the iron when tendered by the plaintiff.

5. The testimony of the plaintiff, Burt, as to the cost of the manufacture of iron of the kind mentioned in the written contract of January 15th, 1880, having been admitted subject to exception, the defendant prays the Court to exclude the same from the consideration of the jury.

1st. Because the same is not competent to be taken into consideration by the jury, in determining the measure of damages which the plaintiff is entitled to recover in this case ; and—

2nd. Because the said witness in his cross-examination, admitted that there were items of cost entering into the

proper calculation of the cost of the manufacture of said iron, the amounts of which items he could not give.

The Court (STEWART, J.,) granted the prayer of the plaintiff, as also those of the defendant, except the first, which was refused as offered, but was granted with the following addition or modification: "Unless the jury believe from the evidence, that the defendant waived the delivery of iron under the contract prior to said offer of plaintiff, dated the 13th of May, 1880."

To the granting of the plaintiff's prayer, and to the refusal of the defendant's first prayer as offered, and to the modification thereof by the Court, the defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, and BRYAN, J.

*W. Starr Gephart,* and *Bernard Carter,* for the appellant.

*John N. Steele,* and *Thomas W. Hall,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

The appellee recovered a judgment against the appellant in the Court of Common Pleas, under certain rulings which will be stated. On the fifteenth day of January, 1880, the parties made a written contract with each other. It is in the following words: " I, H. B. Burt, agree to furnish W. Bollman two hundred tons anthracite pig iron to be equal in quality to Ashland Iron Company's No. 2 and 3 foundry iron, delivered at the Patapsco Works, for the sum of ($37.00) thirty-seven dollars per ton, to be delivered in quantities of about eighteen tons per month; I, W. Bollman, agree to take the iron as above specified as to quality and price."

Burt was the proprietor of an iron furnace; and Bollman was the proprietor of an establishment known as The Patapsco Bridge and Iron Works, which required for its business considerable quantities of wrought and pig iron. We mention the occupation of the parties, because in the exposition of contracts, it is important to consider not only the language employed, but also the surrounding circumstances. We can never know with entire accuracy the meaning of the contracting parties, unless for the time being we place ourselves in the position which they occupied, and view the facts as they then appeared, and consider the inducements which the parties had to make their bargain, and the purposes which they intended thereby to accomplish.

On the day after the contract was made Bollman wrote to Burt, and informed him that he had been awarded the contract for castings for the Water Department, and requested him to "book his order" for the two hundred tons of pig iron, and further said: "You can deliver eighteen tons this month. I would like you to commence delivery as soon as convenient." No deliveries of iron were made with the exception of two small parcels in March. These were delivered on trial, and there was evidence in the case tending to show that they were not of the kind and quality required by the terms of the contract. There was also evidence of some vague and loose conversations between the parties on the subject of the deliveries. But we find no evidence of any fact or circumstance which tends to show a recognition of the contract by Bollman later than the month of March. The plaintiff in person testified that about the latter part of April, Bollman told him he considered the contract "*off.*" On the twelfth of May he wrote a letter to Bollman, in which he stated that he was prepared to deliver iron for the month ending May the fifteenth according to the agreement of January the fifteenth. On the next day Bollman replied and stated

that as no deliveries had been made in January, February, March and April, he had considered the contract null and void, and had so informed him some time before, and that he still so considered it.

Bollman by his contract was entitled to receive two hundred tons of iron, and to have it delivered at the times specified in the agreement. It was known to Burt that it was to be used for the purposes of Bollman's business. In fact, the letter written the day after the contract was made informed Burt that it was required for the purpose of fulfilling a contract made by Bollman with the Water Department. The deliveries of iron were to be made in monthly instalments, and the parcels delivered were to be paid for separately; the payment for one portion not being in any way dependent on the delivery of any other portion. In this respect the stipulations of the contract were clearly divisible, and a failure to make one delivery would not therefore necessarily affect the right and duty of the seller to make another, or the duty of the purchaser to receive and pay for another. According to the words of the contract the transactions of each succeeding month stand separate and apart from each other; and the duty of one party to deliver, and of the other to pay at each appointed time would not depend on what might have occurred in the past, or what might occur in the future. And yet it is most evident that such a construction would defeat the intention of the parties. If Burt had delivered for six successive months the instalments mentioned in the contract, and Bollman had failed to pay for any of them, it would not be just to require Burt to continue to make the deliveries, and to say to him that he had his remedy by an action at law. Though the stipulations are independent of each other so far as the obligation to make payment is concerned, it is impossible to overlook the fact that Burt's just expectations were that the purchase money should be paid with reasonable promptness, so that he

might use the money in the prosecution of his business. We cannot suppose that he made this contract with the intention of binding himself to furnish the iron, and then having to wait an indefinite time for payment. Surely there is nothing on the face of the contract, or in the facts connected with the transaction, which would warrant such an inference. On the other hand, suppose that for six successive months Burt had failed to make any deliveries of iron, it would be equally unjust to say to Bollman that he was obliged to consider the contract in existence, and that his only remedy was by an action at law. We cannot infer that he had any purpose in making this contract, except to obtain the iron to use in his business. In each of the cases supposed, the purposes of the contract would have been defeated, and the party not in default would have had a right to annul it. We do not hold that a mere failure or omission by Burt to deliver one instalment of the iron would, standing alone, have authorized Bollman to declare the contract at an end; although under some circumstances, as will hereafter be seen, such might be the case. But we think that repeated failures to make any delivery would defeat the purposes and objects of the contract, and that an action at law would not give an adequate compensation for such breaches. One party would not be bound to acknowledge the existence of a contract, when the other party did not give him what he was entitled to receive under it, and when he could have no adequate compensation for what was unjustly withheld from him.

But there was evidence tending to show that Bollman had condoned the defaults committed by the plaintiff in the months of January, February, and March. When his foreman went to the furnace in March to get iron, even if it was only for trial, an inference was legitimate that he considered the contract as subsisting at that time, and the propriety of this inference was a matter for the con-

sideration of the jury. If then the jury found that he at that time regarded the contract as in force, all the previous defaults were condoned by him, and he could not afterwards set up these condoned defaults as reasons for annulling the contract. We see, however, in the record, no evidence that the April default was ever waived, and assuming that it was not waived, Bollman had a right to annul the contract on this ground, provided he gave due notice to Burt of his determination to do so.

In the construction of contracts, it is seldom that we can derive much aid from decided cases, inasmuch as the intention of the parties in each contract is the controlling question. But when we have ascertained their meaning, adjudications are useful in showing their rights in the given case. In *Withers vs. Reynolds*, 2 *Barn. & Ad.*, 882, the facts were that Reynolds agreed to supply Withers with straw to be delivered on the latter's premises, at the rate of three loads in a fortnight, during a specified time ; and Withers agreed to pay him a certain sum per load for each load so delivered on his premises during the period of the contract. After the straw had been supplied for some time Withers refused to pay for the last load delivered, and insisted on keeping one payment always in arrear ; Reynolds thereupon refused to deliver any more straw. Lord TENTERDEN said : "I am of opinion that the plaintiff is not entitled to recover. There is, I think, no doubt that by the terms of the agreement the plaintiff was to pay for the loads of straw as they were delivered. If that were not so, the defendant would have been liable to the inconvenience of giving credit for an indefinite length of time, and, in case of non-payment, bringing an action for a very large sum of money, which does not appear to have been intended by the contract. Then the only question is, whether upon the plaintiff's saying : ' I will not pay for the goods on delivery ' (for that was the effect of his communication to the defendant), it was in-

cumbent on the defendant to go on supplying straw; and he clearly was not obliged to do so." This case was cited with approval by this Court in the recent case of *Curtis vs. Gibney,* 59 *Md.,* 131. In this case the facts were that Curtis had agreed to furnish Gibney with ten thousand bushels of barley at eighty-seven cents a bushel, and Gibney agreed to accept and pay the drafts of Curtis at five days for the same, without regard to the sale of the malt by him, or the price for which it was sold. A portion of the barley was delivered by Curtis, but Gibney refused to accept drafts for the price, or to remit the proceeds of the sale of it, alleging that he had a right to hold these proceeds, and also other money of Curtis, which he had in his hands as a security for the performance of the contract on the part of Curtis. This Court held that he had no right to retain Curtis' money as a security for the performance of the contract, and that upon his failure to remit to Curtis the proceeds in his hands, the latter was not bound to make further consignments to him. And the same doctrine was again held at the present term of the Court on a second appeal in the same case. (*Supra* 192.)

It might be supposed that the decision in *the Maryland Fertilizing and Manufacturing Company vs. Lorentz & Rittler,* 44 *Md.,* 218, militated against the views which we have expressed. In that case Lorentz & Rittler agreed to furnish the Fertilizing Company with twelve thousand carboys of vitriol, to be delivered at the rate of two thousand carboys a month, during September, October, November, and December, 1873, and January and February, 1874; and the price of each monthly instalment was to be paid by a note at four months. There was no delivery during the month of September, and only partial deliveries were made in October and November. On the fourth of December the Fertilizing Company disaffirmed the contract, and refused to receive any more vitriol under it. This Court held that the contract was divisible; and

that, on the facts in proof, there was evidence tending to show that the purchaser had condoned the failure to deliver in September, and to show that the partial deliveries in October and November were made pursuant to the purchaser's directions. On this basis it was decided that the purchaser had no right to disaffirm the contract on the fourth of December. It will be seen that no question was presented to the Court, which involved the right to disaffirm a contract for a default which had not been condoned.

The questions before us in this case arose in the Court below on a prayer presented by the plaintiff, which was granted; and on one presented by the defendant, which was refused. The plaintiff's prayer leaves the jury to find that Bollman regarded the contract in force, notwithstanding the defaults committed by Burt; whereas we have seen that there is no evidence that Bollman regarded the contract in force after the April default. This objection to the prayer is covered by the special exception filed in the case, and we must give effect to it. And in regard to this prayer, and the rejected prayer on the part of the defendant, we may say that the controlling question in the case is whether Bollman rescinded the contract after the April default, and so informed the plaintiff before he offered to make the May delivery; and this question ought to have been submitted to the jury. If the jury found these facts in favor of the defendant, he would have been entitled to their verdict, in the absence of a waiver of the April default. But if Bollman had failed to rescind the contract, and to inform Burt of the rescission, until the latter offered to make the May delivery, he could not at that time have annulled it.

*Judgment reversed, and*
*new trial awarded.*