JOHN A. SULLIVAN, DENNIS SULLIVAN, WIL-
LIAM SULLIVAN and J. LEO SULLIVAN, PART-
NERS, TRADING AS SULLIVAN BROS. COAL CO.,

*vs.*

EDWARD T. BOSWELL, TRADING AS BOSWELL COAL CO.

*Pleadings: declaration; amendments; inconsistent.    Recoup-
ment; under general issue plea.    Contracts: partly
in parole; question for the jury.*

The plaintiffs brought suit upon a contract for the sale and
delivery of 2,373 tons of coal at the value of $2,971.50, but by
leave of Court amended the declaration by inserting an addi-
tional count by which they sought to recover the sum of
$2,422.20, an amount that had been agreed upon in settlement
and compromise of the suit: *Held,* that the plaintiffs could not
take inconsistent positions in the same suit, and that they were
bound by their first election.                          p. 548

Where a contract sought to be enforced is partly in writing
and partly in parole, it presents a question for the determina-
tion of the jury, upon proper instruction by the Court.  p. 551

In an action of assumpsit a defendant may, under the gen-
eral issue, recoup for damages arising from the plaintiff's fail-
ure to execute his contract, and may give evidence to show
injury on which to found a claim for recoupment by way of
defense.                                                p. 553

*Decided February 4th, 1914.*

Appeal from the Circuit Court for Allegany County,
(HENDERSON, J.), where the case was tried before the Court
without a jury.

The facts are stated in the opinion of the Court.

The following are the prayers of the plaintiff and defend-
ant, with the action of the trial Court upon each, and also
the instructions which the Court delivered on its own motion:

*Plaintiffs' First Prayer.*—Even if the Court, sitting as a jury, shall find from the evidence, that the plaintiff, on or about January 17th, 1912, agreed with the defendant to deliver, or cause to be delivered to the defendant, the entire output of the plaintiff's mines in Eckhart, at $1.25 per gross ton, *f. o. b.* Eckhart, Maryland, and same was to be paid for on or before the 25th of the month following delivery until April 1st, 1912, and further find that the plaintiffs did not deliver the entire output of the plaintiffs' mines during the months of January, February and March, and further find that defendant failed to pay in accordance with the terms of said contract for the coal delivered prior to February 1st, 1912, then the defendant cannot recover under his plea of set-off for any damages for coal sold and delivered to parties other than defendant after March 11th, 1912, even if the Court sitting as a jury shall find that plaintiffs rescinded the said contract and refused to ship coal to defendant after March 11, 1912.   (*Rejected.*)

*Plaintiffs' Second Prayer.*—If the Court sitting as a jury shall find from the evidence that no contract on the part of the plaintiffs to sell and deliver the entire output of their mines at Eckhart was made on or about April 1st, 1911, and shall further find that the alleged contract of January 17th, 1912, made no provision for payment for coal to be delivered under said alleged contract, then, as a matter of law, the payment for same became due upon delivery, and the plaintiffs were justified in refusing to consign any coal to defendant under said alleged contract at any time during the period of his failure to pay for same.   (*Rejected.*)

*Plaintiffs' Third Prayer.*—The plaintiffs pray the Court to declare as a matter of law, that under the pleadings and evidence in this case, the defendant cannot recover under his plea of set-off.   (*Granted.*)

*Plaintiffs' Fourth Prayer.*—The plaintiffs further pray the Court to declare as a matter of law that there is no legally sufficient evidence in the case to entitle the defendant to recover under his pleas of set-off.   (*Granted.*)

*Plaintiffs' Fifth Prayer.*—The plaintiffs further pray the Court sitting as a jury to say as a matter of law that in order to entitle the defendants to recover under their plea of set-off, they must show that they have performed all their part of the contract, or that they were prevented from performing it by the plaintiffs.    (*Rejected.*)

*Plaintiffs' Sixth Prayer.*—That if the Court sitting as a jury shall find from the evidence that the paper writing signed by the parties about April 1st, 1911, contained the full terms of the contract made as of that date, and shall further find that the alleged contract of January 17th, 1913, made no provisions for payment for coal as to time and amount per ton, then the verdict must be for the plaintiffs for the contract price of the coal sold and delivered to the defendant by the plaintiffs during the months of February and March, 1912.    (*Rejected.*)

*Plaintiffs' Seventh Prayer.*—The plaintiffs further pray that if the Court shall find from the evidence that the plaintiffs agreed to furnish to the defendants the entire output of their mines, and that the plaintiffs did not so furnish, and that defendants knew the same, and shall further find that the defendants could have gone into the market and purchased coal at the same price they agreed to pay the plaintiffs, that then the Court shall say as a matter of law, that the defendants suffered no damages and the verdict must be for the plaintiffs.    (*Granted.*)

*Defendant's First Prayer.*—The defendant prays the Court to instruct itself sitting as a jury that if it finds from the evidence in this case that on or about the 17th day of January, 1912, the plaintiffs agreed with the defendant for a valuable consideration, to deliver or cause to be delivered to the defendant, the entire output of the plaintiffs' mines at Eckhart, Maryland, at $1.25 per ton of 2240 pounds, free on board cars at Eckhart, Maryland, until April 1st, 1912, but that the plaintiffs failed to comply with the terms

of said agreement in that during the time between the date
of said agreement and the date of the expiration thereof the
plaintiffs shipped to parties other than the defendant a large
quantity of coal in violation of said agreement, and that the
market price *f. o. b.* plaintiffs' mines at Eckhart, of the coal
so shipped and sold in violation of said agreement was greater
than the contract price agreed to be paid therefor, and if
the Court finds that the defendant suffered damages by
reason of the above mention violation of agreement, and if
the Court finds that the damages suffered as aforesaid by the
defendant are in excess of any claim which it shall find that
the plaintiffs have against the defendant, under the plead-
ings and evidence in this case, then the Court shall deduct
from said damages the amount which they shall find due to
the plaintiffs and render a verdict for the defendant against
the plaintiffs for the amount of such excess. (*Rejected.*)

*Defendant's Second Prayer.*—The defendant prays the
Court to instruct itself sitting as a jury that if it finds from
the evidence in this case that the claim of the plaintiffs
against the defendant is less in amount than the damages
suffered by the breach of contract between the plaintiffs and
defendant, then the plaintiffs are not entitled to recover and
the verdict must be for. the defendant for the amount of
the difference between the damages suffered by the defend-
ant, and the plaintiffs' claim. (*Rejected.*)

*Defendant's Third Prayer.*—The defendant prays the
Court to instruct itself sitting as a jury that the measure of
damages of the defendant's claim is the difference between
the contract price agreed to be paid to the plaintiffs for the
coal, and the market price of the coal at the time and place
of delivery thereof in accordance with the terms of the con-
tract, to wit: *f. o. b.* cars at plaintiffs' mines at Eckhart,
Maryland, not exceeding the plaintiffs' claim. (*Granted as
amended.*)

*Defendant's Fourth Prayer.*—The defendant prays the
Court to instruct itself sitting as a jury, that according to

the undisputed evidence in this case the plaintiffs shipped
to parties other than the defendant, between January seven-
teenth, nineteen hundred and twelve, and April first, nine-
teen hundred and twelve, three thousand four hundred and
fifty-two gross tons of coal, and if the Court find from the
evidence in this case that the plaintiffs had agreed to ship the
defendant the entire output of their mine at Eckhart, Mary-
land, and if the Court further find that the coal so shipped
to parties other than the defendant during time aforesaid
was shipped in violation of the defendant's rights under said
agreement, and if the Court further find that during the
period aforesaid the market price of coal was in excess of
the contract price then the defendant is entitled to recover
from the plaintiffs the difference between the contract price
and the market price of the coal shipped in violation of the
contract at the time and place of delivery thereof in accord-
ance with the terms of the contract, and if the Court further
find that the damages so suffered by the defendant are in
excess of the plaintiffs' claim against the defendant, then
the verdict must be for the defendant for the amount of the
difference between the plaintiffs' claim against the defendant
and the damages suffered by the defendant by reason of the
aforementioned breach of contract. (*Rejected.*)

*Defendant's Fifth Prayer.*—The defendant prays the
Court to rule as a matter of law that prompt payment on
the 25th of each month is not of the essence of the contract
in this case, and such violation of said provision as had been
proved by the evidence was not sufficient to entitle the plain-
tiffs to rescind the contract. (*Rejected.*)

*Defendant's Sixth Prayer.*—The defendant prays .the
Court to instruct itself sitting as a jury, that if the Court
find that under the contract it was the duty of the defendant
to pay for the coal shipped to it in any month between the
20th and 25th of the following month, and if the Court
further finds that sometimes the plaintiffs requested and
received payment before, the same was due and sometimes

after it was due, and if the Court further finds that after the defendant had neglected to make prompt payment as provided in the contract the plaintiff nevertheless accepted the payments and continued to ship coal under the contract, then the plaintiff waived the provision above set forth and was not thereafter entitled to rescind the contract on account of previous delayed payment or payments. (*Granted.*)

The Court laid down for its guidance as a jury the law of this case as follows:

If the Court sitting as a jury shall find that the written contract offered in evidence was entered into between the plaintiffs and defendant in March or April, 1911, and that in addition to the written terms it was orally agreed between the parties at the time of signing the contract that the blank left therein for the maximum coal shipment was understood to mean the whole output of the plaintiffs' mine during the period covered by the written contract, then the term of said contract as to the times for payment for coal shipments was of the essence of the contract and for a breach thereof the plaintiffs had the right to rescind the contract and ship no more coal, but if the Court as a jury shall find that the plaintiffs from time to time accepted payments for coal after the stipulated times and thereafter shipped more coal, then these are facts from which the Court as jury may find that the plaintiffs had waived and lost the right to rescind for breaches of said term theretofore made, and the law is that they could not after such waiver. if such be found, recover the right to rescind for future breaches of said term as to payment without some notice to defendant that they intended thereafter to strictly enforce such term, and opportunity after said notice to the defendant to comply strictly with said terms, and if the Court as jury shall further find that the plaintiffs on or about March 12th, 1912, received from the defendant the telephone message as recounted by John A. Sullivan in his testimony and made the answer thereto given

in his testimony, and thereafter and without any further
talk or correspondence plaintiffs shipped no more coal at all
to defendant, although requested so to do, then the Court, as
jury, is instructed that the plaintiffs had no right · in that
manner to terminate the contract and cease shipping coal,
and if the Court as jury further find that defendants there-
after demanded the coal mined by plaintiffs up to March
31st, 1912, and that the plaintiffs mined coal up to said date,
but refused to ship more to the defendant, but sold the same
to other persons than defendant, and that in the meantime
the market price of the coal mentioned in the contract had
risen, then even although the Court as jury may find that the
plaintiffs have not been paid for 2376 tons of coal shipped
prior to March, 1912, at $1.25 per ton, amounting to
$2,971.50, still the defendant may recoup as against said
unpaid bill, and the Court as jury may deduct therefrom
such damages not exceeding the amount of the bill, as the
Court as jury may find it suffered, if any, by reason of the
failure of the plaintiffs to ship coal up to March 31st, esti-
mating the damages at the difference between the contract
price of the coal and the market price *f. o. b.* cars at Eckhart,
at the time the Court as jury may find there were failures to
deliver prior to March 31st, 1912. And the Court, as jury,
is further instructed that even if it find there was a verbal
telephonic agreement between the parties on or about Jan-
uary 19th, 1912, as to the plaintiffs selling and the defend-
ant buying all the coal thereafter mined by plaintiffs, yet if
the previous contract be found as set out in this prayer, there
was no consideration for the second verbal contract, and
therefore there is no legally sufficient evidence to support the
plea of set-off in this case.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

· *Albert A. Doub* and *Austin A. Wilson* (with whom was *Jacob France* on the brief), for the appellants.

*J. Royall Tippett* and *George W. Lindsay* (with whom was *Richard B. Tippett* on the brief), for the appellees.

BRISCOE, ·J., delivered the opinion of the Court.

This suit was brought, in the Court of Common Pleas of Baltimore City, by the plaintiff, the Sullivan Brothers Coal Company, miners and shippers of coal, at Eckhart, in Alle-. gany County, Maryland, against the defendant, Edward T.· Boswell, trading as the Boswell Coal Company, of Baltimore City, Maryland.

The case was removed to the Circuit Court for Allegany County, and was submitted to the Court below, sitting as a jury. From a judgment in favor of the defendant for costs, the plaintiff has appealed.

The questions in the case arise upon demurrers to the several pleadings and to the rulings of the Court upon the prayers. There were no exceptions reserved to the rulings of the Court, on the admissibility of testimony.

The declaration as originally filed on the 28th of June, 1912, contained the six ordinary money counts, in assumpsit, to recover the sum of $2,971.50 the contract price for twenty-three hundred and seventy-six tons of coal shipped by the plaintiff to the defendant, under a contract, dated the day of March, 1911, to be hereafter considered, between the parties, to the suit. An account showing the number of tons, the weight, price and carload lots, was filed with the declaration.

To this declaration the defendant pleaded the two general issue pleas in assumpsit, and an additional plea of set off. A demurrer to the defendant's plea of set off was sustained by the Court, with leave to amend, and subsequently, after various pleadings, the plaintiff's demurrer to the defendant's amended plea of set-off, was overruled, and replications were filed to the seven pleas and issue joined on the replications.

Thereafter by leave of Court, the plaintiff amended its declaration by filing an additional count, alleging the terms of the contract and declaring upon a settlement by way of compromise made on the 23rd of May, 1912.

In this count, after setting out the contract, the plaintiff in substance avers, that the defendant failed and refused to pay for the coal in accordance with the contract; and the plaintiff threatened to bring suit upon the claim to recover the sum of $2,971.50, for the coal, which the defendant failed and refused to pay, and that thereupon after negotiations by and between the parties, the claim as due from the defendant to the plaintiff was adjusted, settled and compromised, and that by the terms of the adjustment, settlement and compromise made by and between the parties on or about the 23rd day of May, 1912, in consideration of refraining to bring suit and of the delivery of the coal, the defendant promised and agreed to pay the sum of $2,422.60 in full settlement of the claim, provided the plaintiff would draw promptly on the defendant for the sum of $2,422.60, with an executed release in full attached to the draft, and that the plaintiff did thereupon promptly issue its draft upon the defendant for the sum of $2,422.60, with the executed release attached to the draft, but the plaintiff refused to honor the draft and failed, neglected and refused to pay the sum of $2,422.60, as agreed upon, in the settlement.

The defendant, thereupon, demurred to this additional count, and the demurrer being sustained by the Court below, the case was tried upon issue joined on the replications to the pleas.

The real questions then for our consideration are presented (1) upon the rulings of the Court on the defendant's demurrer to the plaintiff's amended declaration; (2), the plaintiff's demurrer to the defendant's amended seventh plea of set-off; and (3), to the ruling of the Court, on the prayers.

There was no error in sustaining the defendant's demurrer to the plaintiff's additional count declaring in the same suit upon settlement and compromise of the 23rd of May, 1912,

as stated in the count. The plaintiff had elected in the original suit to stand upon the terms of the contract and to recover for the sale and delivery of 2378 tons of coal, at the value of $2,971.50, but in the additional count they sought to recover the sum of $2,422.60, as agreed upon in the settlement and compromise. The plaintiff could not take two inconsistent positions and was bound by his first election. 8 *Cyc.* 535; *Cole* v. *Hines,* 81 Md. 479; *Bollman* v. *Burt,* 61 Md. 422; *Troup* v. *Appleman,* 52 Md. 456; 1 *Poe, Pl. & Prac.* 302; and *Western Bk.* v. *Kyle,* 6 Gill, 350.

The demurrer to the defendant's amended seventh plea of set-off was overruled, but the Court at the conclusion of the case, granted the plaintiff's fourth prayer which declared as a matter of law that there was no legally sufficient evidence to entitle the defendant to recover under his plea of set-off. And in its own instruction declared, "the Court, as a jury, is further instructed that even if it find that there was a verbal telephonic agreement between the parties on or about January 19th, 1912, as to the plaintiff selling and the defendant buying all the coal thereafter mined by the plaintiff, yet if the previous contract be found as set out in the prayer, there was no consideration for the second verbal contract and therefore there is no legally sufficient evidence to support the plea of set-off, in this case."

We discover no such inconsistent or contradictory rulings under the facts of the case, or such injury to the plaintiff; thereby, as would justify a reversal, on the contention of the appellant.

As the main questions of the case arise upon the action of the Court, upon the prayers, we shall now proceed to consider these rulings, in connection with the evidence set out in the record.

The Court below granted the plaintiff's third, fourth and seventh prayers, and the defendant's third and sixth, and rejected the rest of the prayers on both sides as offered.

Besides this, it submitted a written instruction of its own, declaring the law as controlling upon the facts of the case.

The Reporter of the Court will set out the Court's instruction, in his report of this case.

The instructions, we think, fully and properly submitted the law and facts of the case, to the Court, sitting as a jury, and are not open to the objections urged against them.

The contract, on which the plaintiff relied as the basis of the suit, was in writing, and was dated sometime in March, 1911. It was offered in evidence by the plaintiff and is as follows:

"ECKHART MINES, MD.

Sullivan Brothers Coal Company of Eckhart, Md., agrees to sell, and Boswell Coal Company agrees to buy the following coal at the prices and upon the terms herein named:

Quantity: Not to exceed          gross tons, nor to be less than Thirteen Thousand Five Hundred gross tons.

Kind of Coal: George's Creek Coal, same as shipped during Feb. & March, 1911.

Delivery: About equal monthly proportions.

Shipment: Subject to orders of the Boswell Coal Company.

Price: $1.20 per gross ton to Sept. 30th, 1911, and $1.25 per gross ton to March 31st, 1912. This price is f. o. b. mines.

Payment: Cash on the 20th to the 25th day of each month, to cover all deliveries made during the preceding calendar month.

Expiration: March 31st, 1912.

Ship to:

Via:

Note:

Signed in Duplicate:

Accepted:   BOSWELL COAL COMPANY,

EDW. T. BOSWELL.

Witness:

T. F. SHEEHAN.

Accepted:

SULLIVAN BROTHERS COAL Co."

The plaintiff, John A. Sullivan, testified that his coal company, had shipped some coal to the Boswell Coal Company in February and March, 1911, before the execution of the contract; that after the execution of the contract they shipped coal of the same quality as that shipped in February and March; that he thinks he shipped under the contract some eighteen or twenty thousand tons, and stopped shipping about March 11th, 1912; and that the defendant is indebted to the plaintiff for over nineteen hundred tons shipped in February, and over five hundred tons shipped in March, 1912, making a total of twenty-three hundred and twenty-four (2324) tons at $1.25 per ton, which has not yet been paid for; that the coal for which the defendant is still indebted is for coal shipped in February and March, 1912. January shipments have been paid for.

He also testified, that under the agreement he was to ship the Boswell Coal Company thirteen thousand five hundred (13,500) tons of coal; that he exhausted the shipment of thirteen thousand five hundred tons sometime in November, 1911, but he continued to ship some coal after that date.

Upon being called, on behalf of the defendant, he testified, that upon looking at his book of original entries he finds that he shipped in February to the Boswell Coal Company, 1919 tons, and in March, 1912, 457 tons. To others besides the Boswell Coal Company, in February, he shipped 497 tons to Slatterly Brothers, and 71 tons to Cushwa and Son, and in March, 1912, 1,329 tons to the Piedmont and Georges Creek Coal Company; 444 tons to the Consolidation Coal Company, 290 tons to the Gleason Coal Company, and 821 tons to Slatterly Brothers, making a total of 3,452 tons.

There was testimony upon the part of the defendant, without objection, that the blank in the contract of 1911, was left at the suggestion of the plaintiff, Sullivan, that he did not want to fill it in, because he did not know what he could ship, that it was clearly understood that the defendants were to get the entire output of the mines during the contract, and

it was agreed between the parties, at the time of signing the contract, that the blank left in it, for the maximum coal shipment was understood to mean the whole output of the mines, during the time covered by the written contract. There was also testimony to the effect, that the market value of the coal *f. o. b.* mines, in the first two weeks of February, was $1.75; the second two weeks of February, $1.90 up to $2.80; the first week of March, $2.25; the second week of March, $2.50 to $2.75; the third and fourth weeks of March, $2.50 to $3.00.

The plaintiff in rebuttal testified, that while the blank in the contract was left at his request, but that he never agreed to deliver the full output of the mines, that the 13,500 tons in the contract was the maximum amount, and that was all he intended to ship the defendants.

The testimony upon this and other material points contained in the record, it will be seen, is largely conflicting, and as the contract sought to be enforced was made out partly by written and partly by oral evidence, they were questions clearly to be determined by the Court sitting as a jury, upon proper instructions by the Court, on the law of the case. *Roberts* v. *Bonaparte,* 73 Md. 191; *Meyer* v. *Frenkil,* 113 Md. 46.

The suit was to recover for coal delivered under the contract of March, 1911, and by the instruction, the Court sitting as a jury was properly and correctly told, "that if the Court sitting as a jury shall find that the written contract offered in evidence was entered into between the plaintiffs and defendant in March or April, 1911, and that in addition to the written terms it was orally agreed between the parties at the time of signing the contract that the blank left therein for the maximum coal shipment was understood to mean the whole output of the plaintiffs' mine during the period covered by the written contract, then the term of said contract as to the times for payment for coal shipments was of the essence of the contract and for a breach thereof

the plaintiffs had the right to rescind the contract and ship no more coal, but if the Court as a jury shall find that the plaintiffs from time to time accepted payments for coal after the stipulated times and thereafter shipped more coal, then these are facts from which the Court as jury may find that the plaintiffs had waived and lost the right to rescind for breaches of said term theretofore made, and the law is that they could not after such waiver, if such be found, recover the right to rescind for future breaches of said term as to the payment without some notice to defendant that they intended thereafter to strictly enforce such term, and oppor- tunity after said notice to the defendant to comply strictly with said terms, and if the Court as jury shall further find that the plaintiffs on or about March 12th, 1912, received from the defendant the telephone message as recounted by John A. Sullivan in his testimony and made the answer thereto given in his testimony, and thereafter and without any further talk of correspondence plaintiffs shipped no more coal at all to defendant, although requested so to do, then the Court, as jury, is instructed that the plaintiffs had no right in that manner to terminate the contract and cease shipping coal."

The right of the defendant to recoup for damages result- ing from the plaintiffs alleged breach of the contract and the measure of damages, under the facts of the case, were in our opinion correctly stated and properly submitted to the Court sitting as a jury in that part of the Court's instruction, which is as follows: "and if the Court as a jury further find that defendants thereafter demanded the coal mined by plaintiffs up to March 31st, 1912, and that the plaintiffs mined coal up to said date, but refused to ship more to the defendant, but sold the same to other persons than defendant, and that in the meantime the market price of the coal mentioned in the contract had risen, then even although the Court as jury may find that the plaintiffs have not been paid for 2,376 tons of coal shipped prior to March, 1912, at $1.25 per ton,

amounting to $2,971.50, still the defendant may recoup as against said unpaid bill, and the Court as jury may deduct therefrom such damages not exceeding the amount of the bill, as the Court, as jury, may find it suffered, if any, by reason of the failure of the plaintiffs to ship coal up to March 31st, estimating the damages at the difference between the contract price of the coal and the market price *f. o. b.* cars at Eckhart, at the time the Court as jury may find there were failures to deliver prior to March 31st, 1912."

It is well settled, in this State, that in an action of assumpsit, a defendant may, under the general issue, recoup for damages arising from the plaintiff's failure to execute his contract, and may give evidence to show injury on which to found a claim for recoupment, by way of defence. 1 *Poe on Pleading,* 616; *Abbott* v. *Gatch,* 13 Md. 332; *Warfield* v. *Booth,* 33 Md. 72; *Hinchman* v. *Johnson,* 108 Md. 662; *Doggett* v. *Talham,* 116 Md. 152; *Rawlings Co.* v. *Nash,* 117 Md. 393; *Gas Light Co.* v. *Balt. Tar Co.,* 65 Md. 73, and *Biggs* v. *Langhammer,* 103 Md. 96.

There were other questions presented in argument and submitted in the briefs, but as they relate to questions and matters that would not reflect upon the decision of the case, or change the result of our conclusion, they will not be discussed by us. All of the material questions, essential to a proper determination of the case, were correctly submitted to the Court, sitting as a jury, for its finding, by the granted prayers. As we find no reversible error in the rulings of the Court, as presented by the record, the judgment will be affirmed.

*Judgment affirmed, with costs.*