## NOAH LEE COLE *vs*. JULIUS HINES.

*Waiver of Forfeiture—Sales on the Instalment Plan—Election Between Inconsistent Rights.*

Where a party has a right either to rescind a contract or to continue it in force, his election when once made is final, and he cannot after-wards alter his determination.

Where a contract for the sale of goods on the instalment plan provides that upon default of the buyer in paying any instalment the contract might, at the option of the seller, be annulled, and the latter entitled ·to retake the goods, and the seller, after a default, promises to extend the time of payment of such instalment, such promise is a waiver of his right to declare a forfeiture for that default, and he is not author-ized to retake the goods until the expiration of the time so limited.

Appeal from the Court of Common Pleas of Baltimore City.   The case is stated in the opinion of the Court.

The cause was agreed before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Thos. Ireland Elliott* and *Charles F. Stein* (with whom was *H. H. Bowen* on the brief), for the appellant.

*W. Burns Trundle*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

Noah Lee Cole brought suit against Julius Hines in the Court of Common Pleas of Baltimore City, and the declaration is in these words : " That on the 4th day of April, 1893, the said Noah Lee Cole obtained from said Julius Hines merchandise, consisting of ' one suit of furniture, 18 ½ yards of carpet and one mattress,' upon the terms and conditions set forth in the paper hereto attached, for which he, the said Noah Lee Cole, agreed to pay fifty ($50.10) dollars and ten cents, to be paid in monthly instalments of four dollars each,

in the manner and at the times stated therein. That said Noah Lee Cole accordingly paid on account of said $50.10 the sum of $20, so that on the 15th day of October, 1893, being in arrears in his payments $8, received from said Julius Hines a promise to wait two weeks for the payment of said sum of $8, namely, until the 29th October, 1893, and an extension of the time specified in the contract for payment until said 29th October, 1893. That two days before the expiration of said two weeks, namely, on the 27th day of October, 1893, the said Julius Hines, by his agents, and knowing the said Noah Lee Cole to be away from home and therefore unable to prevent the wrongful seizure and make payment, forcibly entered the premises of said Noah Lee Cole, and removed the goods and merchandise purchased as aforesaid, to the great inconvenience, humiliation and injury of the said Noah Lee Cole and his family."

To this declaration the following contract was attached and was made a part thereof: " This indenture witnesseth, that I have this day rented from Julius Hines the articles hereinafter mentioned, upon the following conditions: That I shall pay to him the sum of $1.00 cash, the receipt whereof is hereby acknowledged, and $4.00 in monthly instalments, each and every 12th from day or date hereof, until the sum of $50.10 shall be fully paid; the said Julius Hines will, upon the final payment, sell to me the said property, and execute and deliver to me a receipted bill of sale thereof. And I also agree to retain them as his goods, at 2017 Oak street, in the city of Baltimore and State of Maryland, for my own use; but nevertheless in trust for and as the property of Julius Hines, who neither parts with nor do I acquire any title thereto until the said sums are fully paid. I further agree not to remove the same from said premises, or sell or attempt to sell without the consent of Julius Hines; and in case of any default in any payments, or the falsity of my accompanying statements in any one particular, or in other violation of this contract, this agreement shall, at his option, be deemed annulled; and he is hereby authorized

to enter my premises and remove said property; and be it distinctly understood that I have rented these goods from Julius Hines upon the truthfulness of these representations. Julius Hines reserves the right to refuse to send the articles mentioned in this contract if not satisfactory to him. He also reserves the right to give more time than that agreed upon, if it suits his views, without vitiating this contract by such extension of time. Signature: Noah Lee Cole. Date: April 4th, '93. Occupation: Brakeman. By whom employed: N. C. R. R. Salesman: A. W. Hines. Notice of removal must be sent to my store. No articles exchanged and no money refunded if the articles are taken back."

The defendant demurred to the declaration, and judgment upon the demurrer being for the defendant the plaintiff has appealed. The appellee contends that his promise to grant an extension of time for the payment of the two instalments being a voluntary promise without consideration, was not binding, but that, notwithstanding such promise, he was at liberty to annul the contract, retake the goods and forfeit the purchase money already paid by the appellant. It will be observed, however, that this is not like the cases cited by the appellee, where there is a debt absolutely due and payable, and the creditor gratuitously promises to grant an extension of time for the payment. By the express terms of this contract, the vendor, in the event of a default by the buyer, had a right either to declare a forfeiture and retake the goods, or to waive the default and continue the contract in force. The declaration alleges conduct by the seller which, as will be subsequently seen, did amount to a waiver of the default, and the question is whether the defendant was bound by that waiver, or whether he could subsequently and for the same defaults that were so waived, enforce the forfeiture. It is therefore not the case of a mere promise to give indulgence to a debtor or to waive a future default, but one involving the consideration of the effect of an actual waiver.

In all contracts where time is of the essence, a breach of the contract in that respect by one of the parties may be waived by the other party's subsequently treating the contract as still in force. *Pinckney* v. *Dambman*, 72 Md. 178 ; *Webb* v. *Hughes*, L. R. 10 Eq. 281 ; *Black* v. *Woodrow*, 39 Md. 194. In these cases of conditional sales, the acceptance by the seller of an instalment of the purchase money after default is a recognition of the contract as still subsisting, and a waiver of the forfeiture. *Hutchings* v. *Munger*, 41 N. Y. 158 ; *Hurst* v. *Thompson*, 73 Ala. 158. And other acts than acceptance may have the same effect.

A party cannot take two inconsistent positions. If he has a right either to rescind a contract on account of a breach by the other party or to continue it in force, and he elects to continue it in force, he thereby abandons the right to rescind, and is bound by the election so made. *Bollman* v. *Burt*, 61 Md. 422 ; *Md. Fer. Co.* v. *Lorentz*, 44 Md. 233 ; *Laurence* v. *Dale*, 3 John. Ch. 23. And so a vendor of chattels where a fraud has been practised, has a right either to affirm the contract and sue for the price, or to rescind it and retake the goods, but he is bound by his first election. *Troup* v. *Appleman*, 52 Md. 456. In like manner a cause of forfeiture in a lease may be waived. In 1 *Addison on Contracts*, m. p. 260, it is laid down that "the right of entry for forfeiture of a lease is governed by the general law that where a man has got a right to elect to do a thing to the injury of another, his election, when once made, is final and conclusive, and he cannot afterwards alter his determination. If, therefore, a lease has been forfeited, and there is an election on the part of the landlord to enter and defeat the lease or not, as he pleases, and he by word or act manifests his intention that the lease shall continue, he waives the forfeiture, and cannot after-wards annul the lease." *Leake on Contracts*, 3rd ed. p. 583, to the same effect.

In such cases of a waiver of a forfeiture, or of a right to rescind a contract, there is no necessity for a consideration,

but the question turns rather upon the principle of election between two inconsistent rights. *Bishop on Contracts,* sec. 805; *Johnston* v. *Whittemore,* 27 Mich. 466; *Wheeler & Wilson Co.* v. *Teetzlaff,* 53 Wis. 220; *Devoe* v. *Jamison,* 33 Mich. 94.

A case similar in some respects to the case at bar is that of *Albert* v. *Grosvenor Ins. Co.,* L. R. 3 Q. B. 127, where LORD COCKBURN said: "This is the case of a mortgage whereby the mortgagor transfers the property in certain goods to the mortgagees, but subject to the mortgagor's right of redemption; and there are certain clauses in the deed, the result of which is that the mortgagees cannot seize and sell the goods unless the mortgagor makes default in paying the instalments of 2 £, which he is bound to do on each successive Monday till the loan is repaid. Now, the facts are that the plaintiff's wife went to Bayne (who must be taken to have had full authority * * ) and told him that her husband had difficulty in meeting the instalment due on the 28th of August, and Bayne extended the time for payment of that and the next instalment to the 11th of September. Now, the bill of sale provides that if the mortgagor shall make 'default' in payment of the sum of 62 £, 10 s., or any part thereof, the whole amount shall be then immediately due and payable, and it shall be lawful for the mortgagees to take possession of the goods and to sell and dispose of them. Now, 'default' must be taken to mean a non-payment by a party bound to pay, without the consent of the parties having a right to waive the payment. And I see nothing which goes to show that, if by the consent of the person who is to receive payment, the time for payment is extended, the omission to pay within the time specified must be a 'default' within the meaning of the word in the bill of sale, and it would be monstrous to hold that it was a default, for the mortgagee might always lead the mortgagor into a snare by consenting that the time for payment should be extended, and then coming down upon him by insisting that there had been a 'default.'"

It is true that this case, so far as the meaning of the word "default" is concerned, was questioned by LORD JUSTICE BRAMWELL in *Williams* v. *Stern*, 5 Q. B. D., 412. But the bill of sale before the Court in *Williams* v. *Stern*, gave to the vendee a right to remove the property and sell it in the event of a failure to pay the instalments when due, and such failure made the whole debt due. Unlike the case at bar, it did not provide for an election between a right to declare a forfeiture and a right to continue the contract in force. In *Carpenter* v. *Blandford*, 8 B. & C., 575, there was a waiver of a default in payment which was held to be binding. It appeared in this case that the defendant had agreed to sell to the plaintiff certain property at an appraisement to be made by appraisers to be appointed by the respective parties. The price was to be paid on or before March 25th, and the buyer deposited a sum to be forfeited if he did not complete the agreement. The appraisers met on March 25th, when plaintiff's appraiser said that he could not finish the work till the next day. No objection was then made, but on the next day the defendant refused to proceed. In deciding the question of his right to do so, BAYLEY, J., said: " The defendant in this case insists on a forfeiture which is *strictissimi juris*. He ought therefore to shew that he has done everything which he was bound to do to entitle him to insist on the forfeiture and that he has not done anything to waive that right. * * It was the duty of the defendant's agent to inform his principal that such a communication was made, and it must be presumed that he did so. If that communication was made and the defendant meant to insist on the forfeiture, it was his duty to inform the plaintiff that he should insist on the forfeiture, unless the contract was completed on that day."

The principles are conclusive of the present case. The failure of the appellant to pay the instalments when due was a default which did not render the contract void or cause the entire purchase money to become due, but the contract was thereby made voidable at the option of the

.appellee. It was then necessary for the appellee to elect whether he would avoid the contract, retake the goods and declare a forfeiture of the instalments already paid, or whether he would continue it in force and become entitled to the future payments. He made his election to continue the contract in force by his notification to the appellant, who had ˚a right to rely upon it, and having thus waived the forfeiture on account of this particular default, it follows that he could not subsequently insist upon it.

> *Judgment reversed and new trial awarded with costs in both Courts.*

(Decided June 20th, 1895.)