## DAVID KLEIMAN v. BENJAMIN KOLKER
[No. 76, October Term, 1947.]

*Decided February 18, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Herman Berlin* and *J. Henry Ditto,* with whom was *Cary D. Hall, Jr.,* on the brief, for the appellant.

*William Saxon,* with whom was *Louis Mitnick* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Benjamin Kolker (plaintiff-appellee) was the holder of a second mortgage dated September 10, 1932, executed to him by David Kleiman (defendant-appellant) and Dorothy Kleiman, his wife, for the sum of $7,947.85. It was payable in three installments: One, for $2,947.85, without interest, on September 10, 1933; two, $2500 on September 10, 1934; and three, $2500 on September 10, 1935; each of the last two installments to bear interest at six per cent from September 10, 1933. Nothing was paid on the principal of the mortgage or interest due thereon, with the exception of $1586.28 paid on March 9, 1939, from the surplus of a mortgage foreclosure under the first mortgage on the property covered by the Kolker mortgage.

On September 5, 1946, Kolker instituted suit against Kleiman and wife for a breach of the covenants contained in the mortgage which he held on the property sold under the first mortgage foreclosure. A plea of bankruptcy was filed on behalf of Dorothy Kleiman and the court entered a verdict in her favor. Pleas including a plea of limitation were filed on behalf of David Kleiman. A verdict was entered against Kleiman, on which judgment was entered on April 10, 1947, for $6,722.65, with interest from date, and costs, from which he appeals.

In arriving at its verdict, the court disregarded the first payment under the mortgage to appellee, of $2947.85. Its verdict is based on the last two payments. The Kolker mortgage contained the following covenant:

"In case of any default being made in the payment of the aforesaid mortgage debt, principal or interest, in whole or in part, at the time or times limited and mentioned for the payment of the same, as aforesaid, or in

case of any default being made in any covenant or condition of this mortgage, then the whole mortgage debt hereby intended to be secured shall be deemed due and payable, and the sale of said mortgaged property may be made."

It is the contention of the appellant that this provision of the mortgage was breached by him and his wife on September 10, 1933, and the payment of the principal and accrued interest became due and payable at that time. Therefore, any action at law by appellee against the mortgagors, under the covenants of the mortgage for breach thereof, accrued at that time; and, as this suit was not instituted until after twelve years from that date, it is barred by the statute of limitations. Act 1945, Chapter 467. That is, their breach of this clause in the mortgage accelerated the payment of the principal and accrued interest to the date of the breach, and that the entire debt due under the mortgage at that time became due and payable. We have never decided this question. It has been decided differently by the courts in this country.

There is a line of cases that hold that a breach of such a covenant by the mortgagors accelerates the time of the payment of the principal and interest accrued under the mortgage, and that a suit for a breach of the covenants of the mortgage will accrue at that time, and hence the statute of limitations starts to run. A leading case that adopts this view is *Perkins v. Swain,* 35 Idaho 485, 207 P. 585, 586, 34 A. L. R. 894. It was there held:

"Where a contract contains an acceleration clause, positive in its terms and without any optional features in it, a default under said clause renders the entire indebtedness due and the statute of limitations runs from such default."

See annotation, 34 *A. L. R.* 894, and cases referred to.

In 34 *American Jurisprudence,* sec. 151, it is, in part, stated:

"* * * according to the weight of authority, where the acceleration provision is absolute in its terms,—that is, that the note becomes due on default, without any optional features,—the statute of limitations begins to run upon such default, not only where the acceleration provision is in the note itself, but also where it is contained in a mortgage securing the note. Some authorities hold that the statute of limitations does not begin to run on default, even in case of an absolute provision in a note that it shall become due on some default of the promisor."

See 37 *American Jurisprudence*, sec. 582.

A different line of cases hold that such a clause is intended only for the benefit of the mortgagee, and the statute of limitations does not start to run until the mortgagee takes some positive action to show he intends to exercise his right to foreclose the mortgage. We will not attempt to contrast the varying authorities throughout the country, but will give the reason, and some of the authorities upon which it is based, for our conclusion.

Mortgages are given by lenders for investment. The term for which it is to run, in many instances, determines the interest rate. Lenders desire their investments to be secure, interest thereon to be promptly paid, and to run for a definite time. If a failure to pay taxes or insurance resulted in terminating a mortgage at the instance of the mortgagor, mortgage investments could not be made for a definite period. They would be difficult to secure, and borrowers would be restricted to a limited money market. This would result in a hardship to borrowers, and would be against public policy. It would also prevent lenders from securing definite and certain investments. If a mortgage was given for five years, interest to be paid every six months, if the contention of the appellant is sound, it would be within the mortgagors power, by the simple process of refusing to pay the first six months interest, to convert his mortgage from a five year mortgage to a six month mortgage.

We do not think that an acceleration clause was ever intended to bring about such a result. It was intended to stimulate the mortgagor to pay interest, taxes and other payments promptly, and to be beneficial both to the mortgagor and to the mortgagee. It is common knowledge that a mortgagor at times gets behind in the payment of his taxes, and it is waived by the mortgagee, and subsequently paid. On the other hand, if the mortgagee has good reason to believe that a breach of such a covenant is so serious as to impair his investment, he has a right to foreclose. We think that the authorities which hold that an acceleration clause in a mortgage is for the benefit of the mortgagee and not the mortgagor are sound, and this court will follow such ruling.

"It is generally held, however, that such a provision is solely for the benefit of the creditor who may enforce it or not, as he elects; that upon the default specified the provision does not of itself operate to accelerate the maturity of the debt and that the debtor cannot take advantage of it in computing the period of limitation." 37 *C. J.,* sec. 211.

"The mortgage is referred to and made a part of the referee's report, and from it, it appears that the clause in question merely provides that upon default of any part of its conditions the holder might sell the premises at public auction. Nothing is said about the maturity of the notes. The provision relates wholly to the handling of the security. So the only agreement the parties have made is that the premises covered by the mortgage might be sold before the whole debt matured. Such a provision will not be extended by construction—and should not be, for that would be to make a contract for the parties, which is never done." *Trask v. Karrick,* 94 Vt. 70, 108 A. 846, at page 847.

"In the case of *First National Bank v. Parker,* 28 Wash. 235, 68 P. 756, 92 Am. St. Rep. 828, there was a provision in the mortgage to the effect that upon default of the payment of the interest or any part when due the right of foreclosure should immediately accrue. The default ap-

parently occurred more than six years before the commencement of the suit, and the statute of limitations was set up as a defense by the maker of the note and mortgage. The court there held that the general rule as to the effect of such stipulation 'is that such default must be claimed by the mortgagee or it is waived.' " *Coman v. Peters,* 52 Wash. 574, 100 P. 1002.

In *Cox v. Kille,* 50 N. J. Eq. 176, 24 A. 1032, 1033, the mortgage was given for the life of S. M. R., with a provision that if at any time default should be made in payment of interest, for the space of thirty days, then the principal sum and all interest in arrears should immediately become due and payable. The court said:

"But he insists that by virtue of the language of the bond, as above stated, the principal as well as the interest has become due, and that he is entitled to pay the same. * * * Authorities need not be cited in support of the general doctrine that equity will not permit a party to take advantage of his own wrong."

"The provision, however, is for the benefit of the mortgagee, to enable him to procure the money loaned at the time it was agreed to be paid. If the mortgagee so desire, he may institute an action upon default to foreclose, and upon obtaining a decree have the premises sold. He need not do so, however; the stipulation being made for his benefit, he may waive it without putting himself in default." *Lowenstein v. Phelan,* 17 Neb. 429, 22 N. W. 561.

"The clause in the note providing for a forfeiture of the credit on default in the payment of interest was inserted for the sole benefit of the creditor; and he might waive it or not at his election." *Core v. Smith,* 23 Okl. 909, 102 P. 114, at page 119.

In *Keene Five Cent Sav. Bank. v. Reid,* 8 Cir., 123 F. 221, at page 224, the court, dealing with a provision which gave the mortgagee absolute power to accelerate its payment upon default, said:

"It is obvious, therefore, that if the effect of the above-quoted mortgage clause was to render the entire indebted-

ness secured thereby immediately payable when the first default in the payment of interest, or any default, prior to November 4, 1896, occurred, whether the creditor did or did not elect to treat it as due, then the action is barred, and the decree below was for the right party. On the other hand, if the mortgage clause in question merely gave to the creditor an option to treat the indebtedness as due in case of a default, which he might not exercise at his pleasure, then the debt sued for was not due until the present action was brought, and the decree below is indefensible. The effect of such clauses as the one in question has frequently been a subject for judicial consideration, and, while the decisions are not entirely harmonious, yet the decided weight of reason and authority is in favor of the view that such provisions are not self-operative; that they are for the benefit of the creditor, and intended to give him, on grounds of convenience, the right to treat the entire debt as matured, if an installment of interest is not paid as and when it should be, or if the taxes on the mortgaged premises are not paid pursuant to agreement. The great majority of the cases treat such provisions, when contained in the mortgages, as designed to further constrain and stimulate the debtor to meet his engagements promptly, and to arm the creditor with a right in the nature of a right to declare a forfeiture or to exact a penalty, which he may or may not exercise, and as a right which the courts will never regard as having been exercised by the creditor, or as having any effect upon the period of maturity specified in a note or bond, without some affirmative action on his part, such as a notification to the debtor, by a suit or otherwise, that on account of the default he elects to treat the entire indebtedness as due. Attention has also been called to the fact that to hold such provisions as the one in question to be self-operative would be to confer on the debtor the right to take advantage of his own wrong; that is, to mature an indebtedness which was intended as an investment for a given period, in advance of the time specified on the face of

his note or bond, by failing to keep his engagements." (See cases here cited.) "We are constrained, by the reasons stated in the foregoing decisions, to hold that such a provision as the one now in question is not self-operative; that it did not render the principal note, secured by the mortgage, due and payable in advance of the time specified on its face, unless the creditor or holder elected in some way to treat it as due at an earlier period, in consequence of a default in the interest payments or in the payment of taxes. We are of opinion that this view of the case altogether the most reasonable, the one which is most in accord with the presumed intention of the parties, and the one that is the best supported by authority." *Certiorari* denied. 191 U. S. 567, 24 S. Ct. 841, 48 L. Ed. 305.

*Williston on Contracts*, revised edition, Vol. Six, sec. 2025, referring to covenants here dealt with, says:

"It seems, however, a fairer construction of such a provision—obviously intended as it is solely for the advantage and security of the creditor—to hold that the acceleration of maturity does not occur unless the creditor so elects, even though in terms the provision is absolute."

See *Wentland v. Stewart*, 236 Iowa 661, 19 N. W. 2d 661, 161 A. L. R. 1206, and annotation.

"A mere declaration by the holder of mortgage notes, having an option to accelerate their maturity in case of default in agreed payments, is insufficient, where not followed by affirmative action to effectuate the declared intention to accelerate maturity, to amount to an election which will set the statute of limitations running against the debt or to permit him to exact the increased interest payable after maturity." 161 *A. L. R.* 1206.

We might point out that the mortgage provision here in question does not state that the mortgaged property must be sold upon a breach of the conditions therein mentioned, but provides: "* * * and sale of said mortgaged property *may* be made * * *."

This opinion will not be extended by a discussion of the question of whether the power contained in this

clause is absolute or optional, except to say that all of the American authorities seem to hold that where the power is optional the statute of limitations does not begin to run upon breach. Treating the power as absolute, a breach of such a condition in a mortgage will not accelerate the date of its payment, unless the mortgagee so elects.

The right of action in this case accrued when the mortgage was due, and as it was instituted within twelve years from that date the statute of limitations does not apply, and the judgment of the lower court is correct.

As this disposes of the case, we need not consider the other point raised in the brief.

*Judgment affirmed, with costs.*