BARRIER *v.* MARINE MIDLAND TRUST COMPANY
OF SOUTHERN NEW YORK ET AL.

[No. 144, September Term, 1971.]

*Decided December 8, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Morris Topf,* with whom were *Stanbury & Topf* on the brief, for appellant.

*Theodore A. Miller,* with whom were *Miller & Ehrlich* on the brief, for Marine Midland Trust Company of Southern New York, part of appellees. Submitted on brief by *Stanley B. Frosh* for State National Bank et al., other appellees.

SMITH, J., delivered the opinion of the Court.

An alleged error on the part of Marine Midland Trust Company of Southern New York (Marine Midland), one of the appellees, produced this litigation and what one might suspect at times to have been slightly raised blood pressure on the part of certain of the parties and their counsel. We shall here reverse judgment entered in favor of defendant Marine Midland when its motion for summary judgment was granted.

It all began back in May of 1969 when appellant, James D. Barrier (Barrier), bought a new Pontiac au-

tomobile which he financed through Marine Midland. He moved to Maryland, taking up his residence in Montgomery County. Marine Midland believed him to be in default. Through State National Bank of Bethesda (State National) Barrier's car was repossessed, the repossession being described by Barrier as having taken place "in the early dawn or predawn hours of May 24, 1970." Barrier filed suit against Marine Midland, State National, and two individuals. The declaration contained counts for trespass *d.b.a.,* libel, and slander, claiming $5,000 for compensatory damages and $150,000 for punitive damages on each count.

A settlement agreement was reached by which the sum of $1,000 was to be paid to Barrier plus reimbursement to him of $100 of costs for a public apology by the banks to be published in a Washington area newspaper for a period of one week.[1] Unfortunately, that did not dispose of the matter because, through what Barrier's counsel describes as "inadvertency", Barrier's check for his October payment on the car was not honored by the bank on which it was drawn. Barrier did not get his settlement and Marine Midland declared the contract relative to the car in default, demanded the balance due, and demanded Barrier's automobile which he does not wish to surrender.

At this point, the situation can best be understood by referring to certain dates and what transpired on those dates:

October     7—Barrier's October payment to Marine Midland was due.

October    15—Barrier's attorney responded to settlement proposals by advis-

---

1. The exact language specified in the release agreement was: "We, State National Bank of Bethesda and Marine Midland Trust Company of Southern New York, do publicly apologize to James D. Barrier, of 403 Muddy Branch Road, Gaithersburg, Maryland, for any embarrassment or inconvenience we may have caused him arising from an unjustified repossession of his automobile."

ing that his client was prepared to settle on either of two bases, namely $1,000 plus public apology, with him designating the newspaper to print the apology, or $5,000 without a public apology.

October 19—Barrier's check dated October 5 for his October payment was dishonored the first time by his bank.[2]

October 19—Counsel for Marine Midland accepted on behalf of his client the $1,000 plus public apology proposal.[3]

October 22—Barrier's counsel forwarded release executed by his client and "line of satisfaction" ("Potomacese" for an order dismissing the case as "paid, settled, and satisfied").

---

2. Precisely when Barrier learned of this does not appear. In one of the court papers he says that he learned of this subsequent to October 19, "that the Plaintiff was verily of the belief that there were sufficient funds in his said checking account but that he directly deposited additional funds therein to make good the October 5, 1970 check as aforesaid."

3. In its plea on equitable grounds Marine Midland says of the settlement:

"Out of concern and consideration for the plight of the Plaintiff who was represented as inadvertently overlooking his May, 1970 payment and being otherwise innocent of his violations of his installment contract obligations, and for practical economic reasons, the principal defendants, Marine Midland and State National Bank agreed in late October, 1970, to settle this case by payment of $1,000.00 to the Plaintiff and payment of $100.00 for advertising costs for an apology to the Plaintiff for any inconvenience or embarrassment caused him by an unjustified repossession of his automobile. The precise language of the apology was a material part of the considerations agreed to be paid by the Defendants."

October     29—Counsel for Marine Midland advised counsel for Barrier that he had written to Marine Midland for money and expected to be in a position to disburse about the middle of the following month.

November    2—October payment again dishonored by the bank.

November    7—Another payment due.

November    8—Date of check originally intended for November payment, but which would have been for October payment.

Week of November 8—Public apology printed in *The Washington Post.*

November 16—November 8 check cleared the bank.

November 25—Marine Midland's attorney advised Barrier's attorney that Barrier "was in default for his October and November payments and told him that unless there was a satisfactory explanation Marine Midland was going to call the loan." Barrier's attorney said that this came as a surprise to him, that he would speak to Barrier and get back to Marine Midland's attorney. He called back the same day, stated that there was an explanation, and asked that nothing be done for a week inasmuch as he was departing for

a vacation. Marine Midland's attorney "agreed to hold off."

November 30—On or about this date Barrier received a notice from Marine Midland that his payment of November 7 was past due and the total amount due including "any accrued late charges" was $151.90.

November 30—Barrier drew check to Marine Midland in the amount of $151.90 as per the notice. This check was received by Marine Midland but has never been deposited.

December 21—Counsel for Marine Midland wrote the attorney for Barrier as follows:

"I've researched and poked and looked. Your man, to my satisfaction, is in default.

"This is formal notice to confirm our earlier conversations that James D. Barrier is in default by virtue of the dishonor twice of the October 5 [sic], 1970 check, copy of which is enclosed, and the failure to pay the November payment on November 5 [sic], 1970.

"I hold a check from Barrier dated November 30, 1970 in the amount of $151.90. I am informed that a payment dated in December has been received by the Bank that will not be presented per my instructions.

"You had earlier advised that Barrier would supply me evidence that Barrier had another account at his bank in the name of 'Landscape Service' that belonged to him and in which were funds to cover the dishonored check of October 5, 1970. This Barrier has not done.

"The arithmetic is as follows:

| | |
|---|---:|
| Account Balance: | $2,238.00 |
| Unearned Interest Discount | 126.78 |
| | $2,111.22 |
| Total late fines due ($5.00 per late charge— 8 late payments) : | 40.00 |
| BALANCE | $2,152.22 |

"The book on the Pontiac is $2,100.00. If the car is in decent condition he can turn it over for re-sale and we'll settle any deficiency out of the money we hold and disburse the balance to you together with his undeposited November and December checks.

"Or, he can send us a certified check for $1,152.22 and we will add that to the $1,000.00 we have and call it square—the November and December checks to be returned.

"Please let us know promptly which way you want to go."

Other correspondence followed that.

January 11—Barrier asked leave to amend his declaration by adding two additional counts, one in assumpsit against both banks in the amount of $1000 because of the failure to honor the previously mentioned settlement, and one for conspiracy against both banks demanding punitive damages of $10,000,000 and compensatory damages of $10,000 claiming, among other things, that they "were geared to, and did, pounce upon the Plaintiff,

James D. Barrier, to avenge the public apology they had previously extended to him but did not honestly mean."

February 4—Leave to amend was granted.

February 11—Plea on equitable grounds filed on behalf of Marine Midland setting forth, among other things, the settlement, the difficulty with the October 7 payment, and that Marine Midland had formally declared Barrier in default. It requested the court to:

"1. Order that the attached Line marking the case Paid, Settled and Satisfied be filed in this case, and

"2. Order that the Release executed by the Plaintiff be retained by Marine Midland, and

"3. Award Judgment to Defendant Marine Midland in the amount of $2,152.22, together with repossession costs, if any, and $322.82 attorney's fees, plus interest and costs.

"4. Order the Plaintiff to deliver the automobile, being one 1969 GTO Pontiac 8 cylinder, Model GTO Judge, convertible, Serial No. 242679B162902 to Defendant Marine Midland Trust Co. for sale by it with reasonable notification to the Plaintiff of time and place of any public or private sale, and

"5. Order the Defendant Marine Midland to report the proceeds of said sale and, if there be any differences, from the judgment awarded Defendant Marine Midland under paragraph 3, above, to satisfy said deficiency from the $1,100.00 held by Defendant Marine Midland for the account of Plaintiff, and

"6. Order Defendant Marine Midland to disburse any balance held by him after the conclusion of the proceedings set forth in paragraph 4 and 5 above, and if there be any deficiency owed by the plaintiff to the Defendant, order the Defendant to pay the same forthwith.

"7. Order the Plaintiff and his attorney to immediately cease and desist from further public comment concerning this matter."

February 24—Interrogatories filed by Barrier directed to Marine Midland.[4]

February 26—Pleas filed by State National together with cross-claim against Marine Midland.

March 18—Motion for summary judgment was filed by Marine Midland.

The matter ultimately came on for hearing on the motion for summary judgment. A judgment by default was entered in favor of State National against Marine Midland "subject to ex parte proof." In granting the motion of Marine Midland for summary judgment the circuit court also:

"ORDERED that:

(1) The Line attached to the Plea on Equitable Grounds marking the case Paid, Settled and Satisfied be filed in this case, and it is further

(2) The Release executed by the Plaintiff be retained by Marine Midland Trust Company of Southern New York, and it is further

(3) Judgment be awarded to defendant Marine Midland Trust Company of Southern

---

4. These very comprehensive interrogatories were never answered. Although Barrier's attorney requested answers several times, it does not appear that he ever sought to invoke the penalty of Maryland Rule 417 d.

New York in the amount of $2,152.22, together with $45.00 of repossession costs and $322.82 attorney's fees, plus interest and costs, and it is further

"ORDERED that:

(4) The Plaintiff deliver the automobile, being one 1969 GTO Pontiac 8 cylinder, Model GTO Judge, convertible, Serial No. 242679B162901 to Defendant Marine Midland Trust Company for sale by it with reasonable notification to the Plaintiff of time and place of any public or private sale, and that,

(5) The Defendant Marine Midland Trust Company report the proceeds of said sale and, if there be any differences, from the judgment awarded Defendant Marine Midland Trust Company satisfy said deficiency from the $1,100.00 held by Defendant Marine Midland Trust Company for the account of Plaintiff, and that,

(6) Defendant Marine Midland Trust Company disburse any balance held by it after the conclusion of the proceedings set forth in paragraph 4 and 5 above, and if there be any deficiency owed by the Plaintiff to the Defendant, the Plaintiff is hereby ordered and directed to pay the same forthwith, and that,

(7) The Plaintiff and his attorney, shall cease and desist from further public comment concerning this matter."

## MOTION TO DISMISS

Marine Midland urges that the appeal should be dismissed on two grounds. First, it suggests that the judgment in the trial court is not on appeal as to the first

three counts of the declaration (the original suit). Assuming that he could appeal, which we do not decide, the appeal does not purport to be from that portion of the judgment. Therefore, there is no appeal to dismiss and the determination by the trial judge that the first three counts have in fact been settled disposes of the matter.

Secondly, Marine Midlands says that the appeal is premature as to the final two counts in the declaration, pointing out that the judgment ran to only one of the two defendants, Marine Midland, when both Marine Midland and State National were sued. Only Marine Midland had moved for summary judgment. It states that in *Madden v. Clouser,* 262 Md. 144, 277 A. 2d 60 (1971), we "reaffirmed the point that summary judgment is not final when all of the claims have not been adjudicated below, citing and quoting from Rule 605 a." In *Madden* we cited *Cotham and Maldonado v. Board,* 260 Md. 556, 273 A. 2d 115 (1971), and *St. Michelle v. Catania,* 252 Md. 647, 250 A. 2d 874 (1969), as examples of the proper way under Maryland Rule 605 a to handle cases involving multiple claims. That rule provides that "the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Although a perfectionist might have desired the compliance with the rule here to have been handled a bit more precisely, nevertheless the record at one point states:

> "THE COURT: I grant the motion.
> "MR. TOPF: Would your Honor make such a final determination so there is no delay warranted in the taking of an appeal if one chose to proceed?
> "THE COURT: Yes. Yes indeed. Today will be final as to the motion and pleadings, and you might note your appeal."

Accordingly, the motion to dismiss is denied.

## THE MERITS

Barrier suggests, somewhat obliquely, that since Marine Midland was indebted to him in more than the amount of the October payment once the settlement agreement was reached the latter part of October, that there can be no default on his part since he is entitled to set-off. As it was put in *Lane v. Volunteer Co-operative Bank,* 307 Mass. 508, 30 N.E.2d 821 (1940), "[S]et-off is an incident of judicial proceedings in which both parties become actors and is accomplished only by judicial action." *See also* 20 Am. Jur.2d *Counterclaim, Recoupment, etc.* § 7 (1965). As that work puts it:

> "The right of setoff is an exercisable right, not a fixed or natural right conclusively established by the mere fact that each of the parties has a claim against the other; until the right is exercised, either party may do as he pleases with his property. The right to a setoff is not an incident to a debt, but to the remedy to secure payment of the debt; setoff is an incident of judicial proceedings in which both parties became actors, and is accomplished only by judicial action."

In *Annan v. Houck,* 4 Gill. 325 (1846), Judge Magruder said for our predecessors:

> "A set-off means a 'cross-claim, for which an action might be maintained against the plaintiff, and is very different from a mere right to a deduction from, or reduction of, his demand, on account of some matter connected therewith.'" *Id.* at 331.

There was no suit here by Marine Midland against Barrier. The settlement of the action between Barrier and Marine Midland as the result of which Marine Midland was indebted to Barrier in more than the amount of the October payment due from Barrier to Marine

Midland could not be set up here as a bar to a determination that Barrier was in default.

Marine Midland's position is that it formally declared Barrier in default because of his failure to pay in accordance with the terms of the contract, thus accelerating the maturity date, thereby producing a debt of Barrier to Marine Midland in excess of the sum otherwise due Barrier.

The acceleration clause in this instance was an optional clause. It provided "when the Buyer is in default * * * then, at the option of the Holder, * * * the entire amount * * * shall become due." In *Kleiman v. Kolker*, 189 Md. 647, 655, 57 A. 2d 297 (1948), this Court held that the breach of a condition in a mortgage would not accelerate the date of its payment unless the mortgagee so elected. In *Gerber v. Karr*, 231 Md. 180, 189 A. 2d 353 (1963), the option given the holder of a note to accelerate the due date of principal upon any default was held exercised by its choice to foreclose and "[t]he unequivocal, overt act of filing proceedings for the collection by sale of the property of [the debt due] evidenced on the record, to all interested persons, that the privilege of acceleration had been [exercised]." A like holding is found in *Santini v. Fritkin*, 240 Md. 542, 214 A. 2d 578 (1965). *See also* 11 Am. Jur.2d *Bills and Notes* § 294 (1963), and 47 Am. Jur. *Sales* §§ 897-898 (1943).

Since the acceleration clause was not self-executing, it follows that the maturity date did not in fact accelerate until the secured party treated it as accelerated. It did not treat the maturity date as accelerated until its attorney wrote the December 21 letter to Barrier's attorney.

Marine Midland's notice to Barrier that the November 7 payment was past due and setting forth the sum then due including accrued late charges was inconsistent as of that time with an intent to accelerate. As we have said, that notice and Barrier's November 30 payment in re-

sponse to that notice were prior to the December 21 letter which for the first time declared Marine Midland's intent to accelerate the maturity date. The situation is similar to that in *Cole v. Hines*, 81 Md. 476, 32 A. 196, 32 L.R.A. 455 (1895), where there was a sale under an installment plan and a default. The seller promised to wait two weeks for the payment of the arrears, but two days before the expiration of the period granted seized the goods. As Judge Briscoe put it, the seller "contend[ed] that his promise to grant an extension of time for the payment of the two instalments being a voluntary promise without consideration, was not binding, but that, notwithstanding such promise, he was at liberty to annul the contract, retake the goods and forfeit the purchase money already paid by the [buyer]." The Court held otherwise stating:

> "In all contracts where time is of the essence, a breach of the contract in that respect by one of the parties may be waived by the other party's subsequently treating the contract as still in force. [Citing authorities.] In these cases of conditional sales, the acceptance by the seller of an instalment of the purchase money after default is a recognition of the contract as still subsisting, and a waiver of the forfeiture. [Citing authorities.] And other acts than acceptance may have the same effect.

> "A party cannot take two inconsistent positions. If he has a right either to rescind a contract on account of a breach by the other party or to continue it in force, and he elects to continue it in force, he thereby abandons the right to rescind, and is bound by the election so made. [Citing authorities.] * * *

> "In such cases of a waiver of a forfeiture, or of a right to rescind a contract, there is no necessity for a consideration, but the question turns rather upon the principle of election be-

tween two inconsistent rights. [Citing authorities.]" *Id.* at 479-80.

\* \* \*

"\* \* \* He made his election to continue the contract in force by his notification to the appellant, who had a right to rely upon it, and having thus waived the forfeiture on account of this particular default, it follows that he could not subsequently insist upon it." *Id.* at 482.

*See also* 47 Am. Jur. *Sales* § 899 (1943), and *Geroy v. Upper*, 182 Or. 535, 187 P.2d 662, 174 A.L.R. 1355 (1947).

Marine Midland in effect made a conditional offer to Barrier to continue the account in force without acceleration if Barrier would pay the November 7 payment together with accrued late charges. Barrier did this— and made his December payment—prior to any effective action on the part of Marine Midland to accelerate and, therefore, prior to withdrawal by Marine Midland of its offer, because the attempt to take effective action to accelerate came in the letter of Marine Midland's attorney to Barrier's attorney which recited the receipt of both payments.

It must be remembered, as was observed in *Tellez v. Canton R.R.*, 212 Md. 423, 129 A. 2d 809 (1957) :

"The function of the summary judgment procedure is not to try the case or to decide issues of fact. It is merely to determine whether there is an issue of fact to be tried, and if there is none, to cause judgment to be rendered accordingly." *Id.* at 430.

The check dated November 30 sent in response to the demand of Marine Midland for payment of the November 7 payment together with accrued late charges has never been presented to the bank upon which it was drawn for payment. There was no trial, so we do not

know whether the check was good. If that check at the time it was drawn was a check which would have been honored then by the bank upon presentation, it follows from what we have said that as of that time there would have been no default. With no default, there could not have been an acceleration. Accordingly, a triable issue of fact was presented, whether the check was good. Therefore, it was improper to grant a motion for summary judgment on behalf of Marine Midland.

Barrier has raised questions concerning the applicability of Code (1969 Repl. Vol.) Art. 83, §§ 128 to 153, the Maryland Retail Installment Sales Act, to this contract which admittedly was executed in New York. We do not find it necessary to reach those questions.

> *Judgment reversed and case remanded for trial on counts 4 and 5 of the declaration; costs to abide the final result.*