# MARINE MIDLAND TRUST COMPANY OF SOUTH-ERN NEW YORK *v.* STATE NATIONAL BANK OF BETHESDA

[No. 213, September Term, 1972.]

*Decided April 3, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Theodore A. Miller* for appellant.

*Stanley B. Frosh* for appellee.

McWilliams, J., delivered the opinion of the Court.

This dustup began in May 1970 when James Barrier sued the appellant (Marine Midland) and the appellee (State National). Judge Smith, for the Court, has recounted the dreary details of that litigation in *Barrier v. Marine Midland Trust Company of Southern New York*, 263 Md. 596, 284 A. 2d 418 (1971). We shall not repeat them here. It is necessary, however, to examine State National's cross-claim against Marine Midland for it is out of that cross-claim that this appeal arises.

State National, in the first count of its cross-claim, filed on 26 February 1971, alleged, in substance, that:

1. On 18 May 1970 Marine Midland requested State National to assist in the collection of a claim against Barrier.

2. Marine Midland agreed to indemnify State National and save it harmless "from and against any and all claims, damages, losses and action resulting from or arising out of its efforts to collect the said claim."

3. As a result of its efforts Barrier sued State National, Marine Midland, and others.

4. Thereafter Marine Midland and State National agreed to pay Barrier $1,000 in full settlement and make a public apology.

5. State National agreed to contribute $250 and mailed a check for that amount to Marine Midland which cashed the check. Barrier signed a release running to both banks; it was delivered to counsel for Marine Midland.

6. The apology was published in the newspapers; it received wide publicity.

7. Thereafter, without the knowledge and consent of State National, Marine Midland refused to pay Barrier.

8. In spite of State National's repeated demands Marine Midland "willfully, wrongfully, and maliciously refused and continues to refuse" to complete the settlement agreement.

9. As a result Barrier moved to amend his declaration so as to charge conspiracy and breach of contract (Counts 4 and 5) against Marine Midland and State National.

10. On 4 February 1971 his motion was granted.

11. As a consequence State National's reputation has been damaged and it has been forced "to incur great expenses in connection therewith, *including counsel fees.*" (Emphasis added.)

In the second count of the cross-claim State National, repeating paragraphs 1 through 10 of the first count, alleged that Barrier's claims arose from its efforts to comply with Marine Midland's request, that its acts in that regard have been neither negligent nor unauthorized, that it is entitled "to be indemnified and saved harmless" against "any and all claims, losses and actions" arising or resulting from its effort to collect from Barrier, that if Barrier recovers on counts 4 and 5 of his amended declaration it will be the fault of Marine Midland, not State National, that any damages sustained by Barrier under counts 4 and 5 "are embraced within the indemnification agreement . . . wherefore, it demands judgment . . . together with any *counsel fees* and other costs . . . ." (Emphasis added.)

A copy of the cross-claim was served on counsel for Marine Midland at or about the time of its filing. Neither plea nor demurrer nor responsive pleading of any kind has ever been filed by Marine Midland.

Two months later, on 26 April 1971, State National moved for the entry of a judgment by default on the cross-claim "which has never been answered." As a part of its motion, it also asked the court to set a date for the

presentation of "its proof of damages." A copy of the motion was served on counsel for Marine Midland at or about the time of filing.

On 29 April there was a hearing before Taylor, J., on Marine Midland's motion for summary judgment against Barrier and State National's motion for a judgment by default. Judge Taylor noted the pendency of *both* motions before the hearing began. Also he remarked, rather pointedly, that although "more than the time allowed by the rule [Maryland Rules 307 and 310 b] [had] expired" there was no plea or answer to the cross-claim. When counsel for Marine Midland objected to the entry of the judgment by default, the colloquy which follows took place:

"The Court: Well, you had notice of it. Weren't you served with a notice of the cross-claim?

"Mr. Miller: Yes, your Honor, and we did not plead, and also the motion for the default, and we didn't answer that, because we knew that the motion for summary judgment was coming today. We didn't know that the motion for default was coming up today, and we assume that today's hearing will dispose of everything.

"The Court: Did you assume it would dispose of everything?

"Mr. Miller: I—let me say that I definitely assume that as confident as we are that the Court will grant our motion for summary judgment that once that was done everything else would fall into place. But we would like an opportunity to be heard on the motion for default judgment. And as far as I am concerned I am willing to do that at the time that—if a time comes that there is a necessity for proof to be offered to damages."

When Judge Taylor announced his intention to grant Marine Midland's motion for summary judgment against

Barrier, his (Barrier's) counsel indicated his intention to appeal to this Court. The court then took up State National's motion for a judgment by default. Counsel for State National made explicit reference during the colloquy to Marine Midland's obligation to indemnify it "against any costs or losses . . . including attorney's fees." The colloquy went on:

"Mr. Miller: He is asking for default judgment.

"The Court: Which really doesn't hurt you, does it, unless it comes back, and—

"Mr. Miller: Maybe I should ask the Court for, first to deny default judgment on the basis of the argument I just made.

"Second, to permit leave to file a plea to the cross-claim against us and for this reason, therefore, to say that I always took the position, and, therefore, never felt really the obligation to enter a plea, and it may have been a misjudgment, if this motion for summary judgment would just wrap the whole thing up.

"The Court: How long ago did you file the motion cross-claim, Mr. —.

"Mr. Frosh: February 23, your Honor. I don't think there is a question they are obligated to us. We have an indemnification agreement which says we agree to indemnify and save you harmless from and against any and all claims, damages, losses, and actions resulting from or arising out of your efforts to collect the above claim.

"The Court: I tell you what I'll do. I'll deny your request for relief, Mr. Miller. I'll grant motion for judgment by default.

"If you are right, it doesn't hurt you. If you are wrong, well, you have got to pay.

"Mr. Miller: Thank you."

On the same day, 29 April, Judge Taylor signed and filed (as of 11 May) the following order:

"The Defendant State National Bank's Motion for Default Judgment having been filed, read and considered by the Court; and after arguments in open court; it is by the Court this 29 day of April, 1971,

"ORDERED that judgment be entered in favor of The State National Bank of Bethesda against Marine Midland Trust Company of Southern New York for all sums which the State National Bank shall have incurred, including attorney's fees in connection with the within cause, all as set forth in the cross-claim of the Cross-Plaintiff State National Bank, and it is further

"ORDERED that a hearing to determine such damages be set after the final conclusion of all proceedings in this cause."

A copy was sent to counsel for Marine Midland on 10 May.

On 13 May Barrier noted his appeal from Marine Midland's summary judgment for $2,152.22. On 8 December 1971 we reversed the summary judgment and remanded the case for trial on counts 4 and 5 of Barrier's amended declaration. *Barrier v. Marine Midland Trust Company of Southern New York, supra.*

Following the remand Marine Midland settled with Barrier. State National neither knew of nor participated in the settlement although it was named in the release. On 3 February counsel for State National sent to the Clerk of the Circuit Court for Prince George's County the letter which follows:

"Would you be kind enough to set a date in the above captioned cause for a hearing on the ex-parte proof by State National Bank on its

judgment by default against Marine Midland Trust Company of Southern New York. You will note in the docket entries in this case (Law. No. 44,697) that on May 11, 1971 a 'judgment by default entered in favor of The State National Bank of Bethesda and against Marine Midland Trust Company of Southern New York, subject to ex parte proof' was entered. We understand that the matter has now been settled between Mr. Barrier and Marine Midland Trust Company of Southern New York, and that a Line of Dismissal of all parties will soon be filed by Mr. Barrier, so that it is now appropriate for our ex parte hearing.

"I would appreciate the earliest possible date on this."

Pursuant to counsel's request the case came on for a hearing before Bowie, J., on 29 February 1972. What follows is an excerpt from the colloquy:

"Now, I [counsel for State National] have been in touch with Mr. Miller [counsel for Marine Midland], and I submitted to Mr. Miller my time sheets as counsel to State National Bank for the time that was expended by counsel ever since May of 1970 up through today . . . ."

\* \* \*

". . . I have heard nothing from Marine Midland or Mr. Miller that would contradict the time involved, and these are the direct out-of-pocket expenses."

\* \* \*

"The Court: . . . [B]ut you are not really disputing the technical proof or the proffer of proof that he has given regarding the $5,500, the submitting of the hours, the number of hours, the amount of the rate he charges, the $250 advance figure or the brief figure?

"Mr. Miller: That is right, your Honor. What he has he has."

Judge Bowie took the case under advisement and gave both sides an opportunity to "submit points and authorities." Counsel for Marine Midland made no effort to submit "points and authorities" in respect of the issue of damages. Instead he filed, on 23 March 1972, a motion to strike and vacate the judgment by default entered 29 April 1971. Judge Bowie, after considering the "divers and numerous memoranda" filed by the parties, found, among a number of other things, that "neither the necessity nor the reasonableness of the fees was disputed." On 31 May he denied the motion to strike and vacate and he entered judgment for State National against Marine Midland for "$5,500 attorney's fees and costs of suit."

Marine Midland pelted Judge Bowie with a barrage of contentions and authorities which might well have required serious consideration had they been presented at a hearing on a demurrer to the cross-claim or, after a proper defensive pleading, in the course of a defense on the merits. With equal fervor it has fired the same barrage at us. It makes much, for instance, of the notion that counsel fees are not within the scope of indemnity agreements and, to be sure, there are cases that so hold. But the problem here is not the construction of an indemnity agreement; it is the integrity of a judgment obtained as a result of the deliberate, multiple, inexplicable and unexplained default of Marine Midland. And that judgment is a hard, cold, ineluctable fact. Were we to overturn it we might as well make a bonfire out of the Maryland Rules and a number of our recent decisions as well.

In *Millison v. Ades of Lexington, Inc.*, 262 Md. 319, 328, 277 A. 2d 579 (1971), Judge Smith, for the Court, said:

". . . 'Like every other judgment, it is conclusive of every fact necessary to uphold it.

*Freeman on Judgments,* sec. 330. . . .' This Court cannot go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted, *Stansbury v. Keady,* 29 Md. 361, 368 (1868), and any testimony offered to contradict liability is inadmissible, *Betz v. Welty,* 116 Md. 190, 195, 81 A. 382 (1911)."

Quite recently, in *Ventresca v. Weaver Brothers, Inc.,* 266 Md. 398, 403-05, 292 A. 2d 656 (1972), Judge Levine,[1] for the Court, said:

"Rule 625 a provides in relevant part that after a judgment becomes enrolled by the expiration of 30 days following its entry, the court has 'revisory power and control over such judgment, only in case of fraud, mistake or irregularity.' As a result of a host of decisions too numerous to list completely here, it is now axiomatic that the power of the court to revise and control an enrolled judgment is no longer discretionary. *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968); *Suburban Properties Management, Inc. v. Johnson,* 236 Md. 455, 204 A. 2d 326 (1964); *Tasea Inv. Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960), and *Williams v. Snyder, Adm'r, supra,* are but a few of the cases which stand for that proposition. . . . .

"From numerous decisions applying Rule 625 a, there have also emerged the requirements that, in addition to proving 'fraud, mistake or irregularity,' one seeking to set aside an enrolled judgment must also establish that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense. *Temple*

---

1. At the time an associate judge of the Sixth Judicial Circuit specially assigned to this Court for that case. Later, on 26 September 1972, he became a member of this Court.

*Hill Baptist Church, Inc. v. Dodson,* 259 Md. 515, 270 A. 2d 802 (1970) ; *Grantham v. Board of County Commissioners,* 251 Md. 28, 246 A. 2d 548 (1968) ; *Eliason v. Commissioner of Personnel,* 230 Md. 56, 185 A. 2d 390 (1962); *Berwyn Fuel & Feed Co. v. Kolb,* and *Tasea Inv. Corp. v. Dale,* both *supra.*"

\* \* \*

"In *Grantham v. Board of County Commissioners for Prince George's County, supra,* where *Berwyn Fuel & Feed Co. v. Kolb, supra,* was quoted with approval, the burden which the party seeking to strike out an enrolled judgment must meet was summarized as follows:

" ' "As was pointed out in *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960) and in *Murray v. Fishman Construction Co.,* 241 Md. 538, 217 A. 2d 357 (1966), the trial court, besides requiring the party, who moves to set aside an enrolled judgment, to prove that he is acting in good faith and with diligence and that he has a meritorious defense, should also require a showing of such facts and circumstances as will establish the fraud, mistake or irregularity allegedly used to obtain the judgment sought to be vacated." ' "

Put bluntly Marine Midland has not alleged in its motion to strike, nor has it shown, anything within a country mile of what we have said is required to vacate an enrolled judgment. Judge Digges provided us with an appropriate coda for this case when he said, for the Court, in *Maggin v. Stevens,* 266 Md. 14, 19, 291 A. 2d 440 (1972) :

"We have no hesitancy in concluding that the judgment here results from inattention to the requirements necessary to prevent its entry; it

was certainly not procured by either fraud, mistake or irregularity. Since more than thirty days had elapsed from the entry, on 10 December 1970, of the judgment by default until a motion was filed to vacate that order, Chief Judge Shook was without power to set aside the judgment on 14 May 1971. Judge Moore was correct in reinstating the judgment by default."

*Judgment affirmed.*
*Costs to be paid by appellant.*